# Appeal of Aultman et al.

# Appeal of Fawcett et al.

# Hopkins's Appeal.

98   505
152   221
98   505
174   451
98   505
175   74
175   622
98   505
25 SC ⁵558
98   505
h217   441

1. By the constitution and laws of the state of Ohio, the stockholders of a certain corporation incorporated under the laws of that state. were made personally liable to the creditors of the corporation in an amount equal to the stock subscribed. Said corporation having become hopelessly insolvent, and all its assets, real and personal, being exhausted, and all the stockholders thereof residing within this commonwealth, and capable of being served with process.—*Held*, that the courts of this Commonwealth had jurisdiction to enforce against said stockholders the personal liability above-mentioned in favor of the creditors of the corporation.

2. Bank of Virginia *v.* Adams, 1 Parson's Eq. 534, distinguished.

3. A bill in equity was filed against the above-mentioned corporation to enforce the said personal liability of the stockholders by a complainant who averred that he, with the assistance of others, had purchased and taken to himself an assignment of all the indebtedness of the corporation, thereby constituting himself the sole creditor of the corporation in trust for himself and the other purchasers. He prayed, therefore, that an account should be taken, and that each stockholder should contribute to the complainant on account of said indebtedness. Subsequently, after answers filed, the court permitted an amended bill to be filed, wherein all the purchasers of the corporation's indebtedness, who were thereby declared to be stockholders of the corporation, were joined as complainants, the prayer being that each of the stockholders should contribute and pay to the original complainant as trustee, his or her just proportion of the debts purchased. *Held*, that there was no change in the cause of action, but merely a formal change in the ground on which the complainant's equity was rested. In the original bill, he claimed as a creditor; in the amended bill, he claimed as a stockholder who had paid more than his share of the debts, and sought contribution from the other stockholders. In either case the decree would be the same. *Held*, therefore, that the action of the court in permitting the amended bill to be filed was not error.

4. Where there is a legal plaintiff either at law or in equity it is not essential that his cestui que trust, if he be a trustee, should be named in the action or proceeding. If, however, the court order such cestui que trust to be made a party to the record, it is not error calling for reversal, since the defendant cannot be harmed thereby. He is indeed benefited, as he has additional security for costs.

5. Where at the request of the directors of a corporation the creditors thereof grant an extension of time for the payment of their debts, such extension will not release the stockholders of the corporation from a personal liability for such debts where such liability is imposed by statute.

[Aultman's Appeal.]

6. *Semble*, that a stockholder of a corporation holding by transfer from a subscriber may relieve himself from liability for unpaid installments upon his stock by a transfer duly entered on the books and accepted by the corporation. An original subscriber cannot, however, thus relieve himself from liability.

7. A stockholder in a failing corporation cannot by transferring his stock relieve himself from his liability thereon as provided by law.

8. Where stock is transferred as collateral and stands in the name of the pledgee, the liability of such pledgee in respect to the stock is the same as though he were the beneficial owner.

9. By the constitution of the state of Ohio all stockholders in corporations chartered under the laws of that state are made subject to a certain individual liability for all stock "owned" by them. *Held*, that said liability exists not only in respect of stock subscribed for, but also in respect of stock distributed as a stock dividend.

10. Where certain stockholders of an insolvent corporation buy at a public sale property of the corporation they are not entitled to any advantage over the other stockholders in respect thereof, and where there has been no laches they will be held obliged to account to such other stockholders for any profits they may have realized.

October 8th and 10th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeals from the Court of Common Pleas No. 2, of *Allegheny county* : In equity : Of October and November Term 1881, Nos. 11, 279 and 252.

These were separate appeals from the same decree. The bill was filed by Thomas Fawcett, plaintiff, against E. Ball & Co., a corporation chartered under the laws of the state of Ohio, C. Aultman, James H. Hopkins, and numerous others, defendants, being all the stockholders in said corporation.

The bill, as originally filed, set forth that "E. Ball & Co." was an Ohio corporation for manufacturing agricultural implements, having a capital stock of five thousand shares each of the par value of $100. That on September 17th 1870, the company was insolvent, and indebted to the extent of $930,234.48, the greater part of which was evidenced by negotiable paper, indorsed for accommodation by the plaintiff Fawcett, a part of which he was subsequently compelled to pay. That the property of the company was sold at public sale, by resolution of the trustees, for the sum of $110,500, which was applied towards the payment of said indebtedness. That complainant, with the assistance of others (afterwards known as the Pittsburgh syndicate), purchased and took an assignment to himself of all the company's indebtedness, amounting to $427,272.56, thereby constituting him the sole creditor of the company, in trust for him-

self and the other members of the syndicate. That under the laws of Ohio, each stockholder is individually liable, over and above the amount of stock owned by him to a further sum equal in amount to such stock. The bill prayed an account to ascertain what amount each defendant should pay and contribute to the plaintiff on account of such indebtedness, and that payment thereof be decreed.

Answers were filed by some of the defendants, and the bill was taken pro confesso as to others. A replication was filed, and the cause was referred to an examiner and master to take testimony and report.

Subsequently, on motion of the plaintiff, the court, under objection and exception by defendants, permitted the replication to be withdrawn, and an amended bill to be filed.

The bill, as amended, named as complainants (instead of defendants) all the members of the syndicate, for whom the plaintiff was trustee, nine-tenths of whom, in value, resided in Pittsburgh, where the principal business of the corporation was transacted. The prayer of the bill, as amended, was: "That each one of the defendants contribute and ⬤ plaintiff, as trustee, his or her just proportion of said ⬤ d or purchased by plaintiff and those for whom he ⬤ in trust."

The answers to the amended bill set forth, inter alia, that certain of the defendants had transferred their stock before the filing of the original bill; averred a combination between plaintiff and the members of the syndicate to buy in certain of the property of the corporation at the sale thereof, whereon they had realized a ⬤ nd claimed that the plaintiff should account for said profit as assets for the payment of the company's debts. The answers also denied the jurisdiction of the court, and averred that the amendment to the bill was unadvisedly allowed.

It appeared that the defendant Hopkins was an original subscriber to the stock of the company. In 1868, the company declared a stock dividend, 17 shares being awarded to him. The certificate therefor was sent to him by the officers of the company, without his request, and after receiving it he did nothing with it. Very shortly afterwards, in 1868, while the company was solvent, he sold and transferred bona fide his original shares. The purchaser claimed the stock dividend certificate, but Hopkins refused to recognize the claim, and the certificate for the seventeen shares remained in Hopkins's possession.

It appeared that the stock standing in the name of the defendant Aultman on the books of the company was not owned by him absolutely, but had been transferred to him in fact as collateral security for a debt due him by the owner thereof.

[Aultman's Appeal.]

He surrendered the certificate to the company in November 1870 (after their insolvency) and a new certificate was issued to the former owners.

The master in his final report held, in substance, that those of the defendants who had assigned their stock before the filing of the bill were not liable to contribute, but that those who held stock when the bill was filed, were liable to contribute their pro rata share of the amount which the plaintiffs (the members of the syndicate) had actually paid for or on account of the company's indebtedness; but that the latter must account, in the settlement, for the profit realized by them on the property of the company which they had purchased.

Exceptions were filed to the master's report, and, after argument, the court, in a learned opinion by WHITE, J., held that under the constitution of Ohio, Art. xiii, § 3, and the statute passed in pursuance thereof, as well as under the rule established by the weight of American authorities, stockholders who had transferred their stock after the insolvency of the company, though before the filing of. the bill, were liable to contribute to the payment of the company's debts. In other respects the court dismissed the exceptions, confirmed the master's report, and entered a decree against all of the defendants (naming them) for contribution at the ascertained rate of $62 for each share.

Fawcett and the other complainants appealed from the decree, assigning for error the decision of the court that they account for the profits realized by them on that portion of the assets of the corporation purchased by them.

Aultman and other defendants appealed from the decree, assigning for error, inter alia, want of jurisdiction, the permitting of the amendment to the bill, and the decree for contribution by them respectively.

Hopkins took a separate appeal, assigning for error the dismissal of his exception to the master's report, to the effect that he not having been a *subscriber* to the 17 shares, which were awarded to him as a stock dividend, without request or action on his part, was not liable to contribution in respect thereto.

*Hill Burgwin* (*G. C. Burgwin* with him), for Aultman and others, appellants.—The amendment of the bill changed the cause of action from a creditor's bill by Fawcett, claiming payment, to a stockholder's bill by the members of the syndicate, claiming contribution from co-stockholders. This is never permissible: Chambers *v.* Waterman, 1 Leg. Gaz. Rep. 60, per SHARSWOOD, J.; Wilhelm's Appeal, 29 P. F. Smith 120; Brown *v.* Idley, 6 Paige 52; Rawlings *v.* Lambert, 1 Johns. & Hem-

[Aultman's Appeal.]

ming's Rep. 466; Verplank v. Ins. Co., 1 Edw. Ch. 46. The amendment changed the parties by making a number of the defendants in the original bill complainants in the amended bill. It came too late, after replication and testimony taken before an examiner. It was allowed unadvisedly, without affidavit, and without costs, and the testimony taken under the original issue was treated as taken under the amended issue: Story's Eq. Pl. 891, 887; Equity Rule 10, § 50; Jones v. Wadsworth, 4 W. N. C. 514; Rodgers v. Rodgers, 1 Paige Ch. 424; Abingdon v. Butler, 1 Ves. Jr. 206; Bosanquet v. Marsham, 4 Sim. 573.

The appellants who transferred their stock absolutely before the suit was commenced, to parties who were accepted by the company (whether such transfer was for the purpose of escaping liability or not) are not liable to contribute. Lindley on Part. 1125–27 and passim, citing English authorties. Most of the English cases are under the "Winding-up Acts," but while these Acts provide an easy mode of winding up insolvent corporations, they do not alter the legal or equitable relations of the parties. Mr. Thompson, on the Liability of Stockholders, states the American rule to be otherwise, but the cases he relies on do not bear him out. There are but two limitations: where the stockholder deceived the company into accepting a transferee; and when the transferor retains secretly some interest. The American cases cited on the other side were by *creditors* seeking payment of debts, who may undoubtedly hold the outgoing stockholder liable; but this principle does not apply as between stockholders seeking contribution and former stockholders who have transferred absolutely. In Pennsylvania, the line of decision is that the relation of stockholders to creditors is secondary, not primary; it is in the nature of suretyship, and the usual results of that relation follow, viz.: proceedings against the corporation are an indispensable prerequisite, and if the creditor gives time to the principal debtor the surety is discharged: Boschert v. Brown, 22 P. F. Smith 372; Wright v. McCormack, 17 Ohio St. 86; Patterson v. Wyomissing Co., 4 Wright 117; Means's Appeal, 4 Norris 75; Moyer v. Penna. Slate Co., 21 P. F. Smith 293; Brinham v. Wellersburg Co., 11 Wright 43; Hoard v. Wilcox, 11 Wright 51; Bank v. Adams, 1 Pars. Eq. Cas. 534; Suydam v. N. W. Ins. Co., 1 P. F. Smith 394.

There can be no grounds, in law or equity, why Aultman should contribute, as he did not *own* any stock, but merely held stock, assigned to him as collateral security for a debt due by the owner. He held merely as trustee. Even that was transferred in 1870. The test of liability to contribute is the right to share in the profits: Lindley on Part. 1081.

The court had no jurisdiction. The courts of this state will

not entertain a bill to compel the stockholders of an insolvent foreign corporation, residing here, to pay up their unpaid subscriptions to meet the debts of the company : Bank *v.* Adams, 1 Pars. Eq. Cases 534. Especially will they not exercise such jurisdiction to enforce a liability imposed by a statute of the foreign state in excess of the amount of the stockholder's actual subscription—a liability in derogation of the common law and the law of this state. This has been decided in New Hampshire, in a recent case arising under this same Ohio statute : Rice *v.* Merrimack Co., 56 N. H. 114. Foreign corporations may sue here only by comity—a comity which is never extended where the end sought is repugnant to our state interests or policy. The courts of one state will not act as administrator of an insolvent corporation of another state, nor give effect to a foreign statute of this penal character. The creditor is required to pursue his remedy in the state where the statute was passed, which gave rise to the liability : Paul *v.* Virginia, 8 Wallace 168, 181 ; Erickson *v.* Nesmith, 4 Allen (Mass.) 233 ; Halsey *v.* McLean, 12 Allen 438 ; Erickson *v.* Nesmith, 46 N. H. 371. An additional reason in this case is that the Ohio charter was obtained for this corporation, which transacted its business in Pennsylvania, for the express purpose of avoiding Pennsylvania taxation. The proof of this fact was uncontradicted.

*Hill Burgwin* and *Thomas C. Lazear,* for the appellant, Hopkins.—The decree against this appellant was clearly erroneous, as he never subscribed to the shares of stock, on which he was assessed. The double liability of stockholders under the Ohio statute being in derogation of the common law, the statute must be strictly construed, and be confined to subscribers.

*D. T. Watson* (*Knox* and *Reed* with him), for Fawcett et al., appellants in Fawcett's Appeal and appellees in the other appeals.—We contend that the court erred in holding these appellants liable to account for the profits made out of the syndicate's purchase of a portion of the assets of E. Ball & Co., on the ground that such purchase was upon a constructive trust for their co-stockholders. Even a purchase by a trustee at his own sale is not absolutely void ; it may be voidable if impeached within a reasonable time : Ashhurst's Appeal, 10 P. F. Smith 314 ; Twin-Lick Oil Co. *v.* Marbury, 1 Otto 587. Here the sale was a public sale, made in 1870, under the order of the trustees of the creditors, after full notice, and without taint of fraud. The evidence shows that we asked the other appellants to join with us in the purchase and they refused ; that again in 1876, we invited them to come in on the same basis with ourselves,

and they replied, through their counsel, " that it is a little too late to try to induce others to put their necks in the halter; that they prefer to stand on their legal rights." No claim was ever formally made against us on this ground, but the credit for such profits was allowed of the gratuitous motion of the court. If we had made a loss instead of a profit, the other appellants would not have been liable with us—why then, after we alone risked $40,000, should they participate in our profits?

The original bill, as shown by its prayer, was filed in the double aspect of a creditor's bill to compel payment and a stockholder's bill to enforce contribution. The court suggested the amendment. We did not think it necessary, but as it would do no harm we complied with the suggestion. The cause of action was not changed; no additional burden was put on the appellants; no new parties were brought in. The transfer of the names of the members of the syndicate from defendants to plaintiffs was purely technical. Fawcett was originally made sole plaintiff, because the legal title was vested in him, and his cestuis que trustent who were originally made defendants, were by the amendment not improperly named as co-plaintiffs with him : Wilhelm's Appeal, 29 P. F. Smith, 120; Danzeisen's Appeal, 23 P. F. Smith 65; Darlington's Appeal, 5 Norris 513; Edmund's Appeal, 18 P. F. Smith 24; 1 Daniel's Ch. Practice pp. 383 and 418; Story's Eq. Pleadings § 891. The suit affecting only the trust property, and not the relations between the trustee and the cestuis que trustent, the latter were not necessary parties at all : Carey v. Brown, 2 Otto 172; Kerrison v. Stewart, 3 Otto 155; Horsley v. Fawcett, 11 Beavan 565.

Fawcett, being accommodation indorser on the notes representing the indebtedness of the company, was a surety; he and his co-members of the syndicate were legally liable to pay every dollar of it, and when they purchased such indebtedness of the company, they became entitled to be subrogated to the rights of the creditors and to recover against their co-stockholders not on the basis of what they actually paid, as contended for on the other side, but on the amount of the original debts: Croft v. Moore, 9 Watts 451; Hess's Estate, 19 P. F. Smith 272; Cheeseborough v. Millard, 1 John. Ch. 409; Scribner v. Hickok, 4 Johns. Ch. 530; Liddendale's Ex'rs v. Robinson, 12 Wheat. 594; Cuyler v. Ensworth, 6 Paige, 32. The extension of time for payment given by the creditors to the principal debtor did not release the stockholders, because the liability in such case is not secondary : Brown v. Hitchcock, 36 Ohio St. Rep. 667. This case also settles the principle that stockholders cannot escape liability by transferring their stock after insolvency.

As to the jurisdiction. The liability under the Ohio statute

[Aultman's Appeal.]

is purely contractual, not penal: Brown *v.* Hitchcock, supra; Merrimac Mining Co. *v.* Levy, 4 P. F. Smith 227; Price *v.* Gates, Pitts. Leg. Jour., April 9th 1870; Hawthorne *v.* Calef, 2 Wallace 10; Flash *v.* Conn, 26 Amer. Rep. 721; Thompson on Liability of Stockholders, § 82; Ochiltree *v.* Railroad Co., 21 Wallace 249; Norris *v.* Wrenschall, 34 Maryl. 492; Hager *v.* Cleveland, 36 Maryl. 476; Moss *v.* Oakley, 2 Hill 268; Corning *v.* McCullough, 1 N. Y. 47; Story *v.* Furman, 25 N. Y. 222; Derrickson *v.* Smith, 3 Dutcher 169; Wehrman *v.* Reakirt, 1 Cin. Sup. Ct., 231; Halsey *v.* McLean, 12 Allen 440; Derickson *v.* Smith, 3 Dutcher 166; Sacket's Harbor Bank *v.* Blake, 3 Rich. Eq. 225; McDonough *v.* Phelps, 15 Howard Prac. 372; Paine *v.* Stewart, 33 Conn., 517; Ex parte Van Riper, 20 Wend. 616; Cameron *v.* Seaman, 69 N. Y. 396; Williams *v.* Hanna, 40 Ind. 535; Bank *v.* Price, 33 Maryl. 487. The decision of Judge KING in Bank *v.* Adams, was upon the ground, inter alia, that the Virginia corporation was not in court. Being contractual, why will not the courts of this state enforce it?

Chief Justice SHARSWOOD delivered the opinion of the court January 2d 1882.

These are appeals from the same decree, and may be considered and disposed of together, as the principal questions raised are the same in all. The facts, which are not in dispute, are very succinctly and clearly stated in the opinion of the learned court and need not be repeated here. We have had the advantage of very able and elaborate arguments by the counsel, both in the printed paper book and orally at the bar.

The first question is as to the jurisdiction of a court of this state to enforce the obligation enforced upon the defendants as stockholders of the corporation of E. Ball & Co., by the constitution and laws of the state of Ohio. The constitution, Art. xiii, § 3, provides, "Dues from corporations shall be secured by such individual liability of the stockholders and by other means as may be prescribed by law; but in all cases each stockholder shall be liable over and above the stock by him or her owned and any amount unpaid thereon, to a further sum at least equal in amount to such stock." And the statute under which the corporation of E. Ball & Co. was organized provides, in conformity to the constitution, "that all stockholders of any . . . . joint stock company organized under the provisions of this act shall be deemed and held to an amount equal to their stock subscribed in addition to said stock for the purpose of securing the creditors of said company." It has been earnestly contended that the individual liability thus imposed on the stockholders is a penalty, and that the courts of one state will not enforce the

penal laws of another. This is undoubtedly so; but was this liability thus provided for in any sense a penalty? The defendants became owners of their stock either by original subscription or by assignment from subscribers, and assumed voluntarily all the obligations imposed upon them as owners. It was a contract, express or implied, to pay not only for the stock owned or subscribed, but so much in addition as would be necessary for the purpose of securing the creditors of the company. This contract could be enforced in any state in which the defendants were amenable to the process of the courts. Upon the construction of this statute we are bound to respect if not to follow implicitly the decisions of the courts of Ohio. It has been held expressly by this court in Merrimac Mining Co. v. Levy, 4 P. F. Smith 227, that in a suit arising under a charter of another state, the decisions in that state are the best evidence of the rights and duties of the stockholders under it. In what appears to be the last decision of the supreme court of Ohio, Brown v. Hitchcock, 36 Ohio St. Rep. 667, throughout the opinion delivered by WHITE, J., the obligation in question under this same statute is treated as a part of the contract of the owner or subscriber to the stock, and the opinion is sustained by Hawthorne v. Calef, 2 Wall. S. C. 10, in which it was held by the supreme court of the United States that a state statute repealing a former statute which made the stock of stockholders in a chartered company liable for the corporation debts is, as respects creditors existing at the time of the repeal, a law impairing the obligation of contracts and therefore void. We have no difficulty, then, in holding that the courts of this state have jurisdiction to enforce this contract.

Assuming this, there can be no doubt that the case presented on the bill below was proper for the cognizance of a court of equity. It is not like the case of Bank of Virginia v. Adam, 1 Parsons Eq. 534, the correctness of the ruling in which it is not necessary to discuss. It was there held that a court of equity can exercise no jurisdiction to compel the stockholders of a foreign corporation residing here to pay the stock subscribed to such company on the application of a creditor. That was a bill by the Bank of Virginia, a creditor of the Rappahannock Mining Company, on behalf of itself and such other creditors as should come in and contribute to the expense of the suit, against thirty-four stockholders. It was not alleged that the Rappahannock Mining Company was insolvent, nor was it made a party. The prerequisite of such a proceeding was the refusal or neglect of the corporation to enforce the subscription. "If stockholders in one state," says Judge KING, "could be so proceeded against, so might they be in every state of the Union of whose juris-

[Aultman's Appeal.]

prudence English equity formed a part. Such proceedings might even be simultaneous and certainly could not fail to present strange conflicts of decision." The record before us presents an entirely different case. The plaintiff is alleged to be the holder of all the indebtedness of the corporation E. Ball & Co., that corporation is a party, and the bill has been taken against it pro confesso—it is utterly insolvent, and all its assets, real and personal, are exhausted—and the defendants are all the stockholders; they reside within the jurisdiction; were served with process, some appearing and taking defense, and the bill taken pro confesso against such as did not plead, answer or demur under a rule upon them for that purpose which was duly served. It is evident that the court had full grasp of the whole case. They could make no decree which they were not fully competent to enforce. They were not required to settle up the business of a foreign insolvent corporation. It was all settled up—the creditors paid, as far as its assets would go, by the sale of all its real and personal property. We are not called upon to say how it would be if the case were not so. The reasons against a court of equity assuming jurisdiction over the affairs of a foreign corporation are certainly very cogent, and will have to be maturely considered if such question should hereafter arise. We do not now say that the court ought not in the exercise of a sound discretion to decline to interpose at the suit of some of the creditors against some of the stockholders of such a corporation.

The next question is as to the amendment of the bill allowed, or rather advised, by the court and made by the plaintiff. It is most strenuously contended that it was an entire change of the cause of action, and therefore ought not to have been allowed. We are of a different opinion. There was no change in the cause of action, though the ground upon which the plaintiff's equity was rested was formally changed. The original bill was by him claiming as a creditor. By the amended bill he claimed as a stockholder having paid more than his share of the debts and seeking contribution from the other stockholders. In either case the decree would have been the same. As a creditor, as is now conceded, he could not have recovered more than he had actually paid. A surety or accommodation indorser, which the plaintiff originally was, who compromises with the creditor, cannot recover of his principal more than he is actually out of pocket. It appeared by the bill as originally filed that the plaintiff, with the assistance of others, did purchase and have assigned to him all the outstanding indebtedness of the corporation. The allegation, however, of any trust in the plaintiff was wholly unnecessary. Where there is a legal plaintiff, either at law or in

equity, it is not essential that his cestui que trustent—if he is a trustee—should be named in the action or proceeding. They are in no sense parties, except to enforce against them a liability for costs. If the plaintiff recovers, the court cannot settle the equities between him and his cestuis que trustent. That must be the subject of another proceeding between him and them. The order directing the use plaintiffs to be placed on the record was unnecessary. But it did the defendants no harm. Indeed, it gave them an additional security, as it disclosed the names of parties liable for the costs if the plaintiff's bill was dismissed or the costs were finally for any reason imposed upon him. The defendants might perhaps have required it to be done, but they certainly have no ground to complain of it.

It has also been urged that the obligation of the stockholders under the statute was collateral only—not a primary but secondary liability—in short, that they were guarantors or sureties, and therefore, the extensions granted by the creditors to the company released them. It is not necessary to inquire into the circumstances under which these extensions were granted. Such a liability under a similar statute is said, indeed, in Patterson v. Wyomissing Co., 4 Wright 122, to be "analogous to a case of guarantee." That is, as there explained by Mr. Justice Lowrie, "to be enforced if the regular process in the principal contract proves fruitless or if the corporation becomes insolvent." But the analogy can be pushed no further. *Nullum simile quatuor pedibus currit.* The directors are the representatives of the stockholders in all their dealings with creditors. When they asked and accepted an extension it was an act binding on the stockholders. It was their assent. Besides which, when the extension expired, the debt, being unpaid, was revived, and was then a debt newly contracted as far as the then existing stockholders were concerned—and for which their liability under the statute then accrued. The ground upon which the surety is discharged by time given by the creditor on a binding contract without his assent, is that he is thereby deprived of his right to pay the debt and bring suit immediately against his principal. It is evident that such a remedy would have been entirely impracticable in a case like the present.

We come now to consider the cases of those of the appellants who claim that an exception should be made in their favor for the reason that they had assigned their stock to others before these proceedings were commenced. We might hold it as the law of Pennsylvania that a stockholder holding by transfer from a subscriber may relieve himself from liability for unpaid installments to the corporation by a transfer duly entered on the books and accepted by the corporation, but not an original sub-

scriber.  His obligation is *debitum in præsenti, solvendum in futuro :* West Philadelphia Canal Co. *v.* Innis, 3 Whart. 198 ; Pittsburg & Connelsville R. R. Co. *v.* Clarke, 5 Casey 146.  But, however this may be, we think it very clear that a stockholder, whether original or holding by transfer, cannot rid himself of his responsibility to creditors after the corporation has become insolvent.  We think that Mr. Thompson in his Treatise on the Liability of Stockholders has correctly summoned up the doctrine of the American cases ; " A transfer of shares in a failing corporation, made by the transferor with the purpose of escaping his liability as a shareholder, to a person who from any cause is incapable of responding in respect of such liability, is void as to creditors of the company and as to other shareholders, although as between the transferor and the transferee the transfer may be out and out."  Section 215.  See the cases cited by him, to which may be added our own case of Everhart *v.* West Chester and Philadelphia Railroad Company, 4 Casey 339.  The case before referred to in the Supreme Court of Ohio—Brown *v.* Hitchcock (supra)—goes much further, holding that the liability of the stockholders under the statute attaches at the time the debt is contracted or the liability incurred by the corporation, and that, after such liability attaches to a stockholder, it is not discharged by the subsequent assignment or transfer of his stock. It is upon the faith of the existing liability of the stockholders that the creditors must be presumed to trust the corporation and to allow them to get rid of their liability by a transfer of their stock would be to render the remedy of the creditor illusory. In the event of the corporation getting into financial difficulty, threatening insolvency, all the stockholders would hasten to transfer their stock to irresponsible parties, and the creditors would be practically set at bay.  We think, then, as to Bidwell, Stewart, McKee and McKee's executors the decree was right.

In reference to Aultman's Appeal, it is now too well settled to be any longer a question, that when stock is transferred to a man as collateral and stands in his name, he incurs liability as a stockholder, just as if he was the actual beneficial owner :· National Bank *v.* Case, 9 Otto 628.  Most especially is this just and right as to creditors who trust to his name and have no notice of the secret trust upon which the stock is held.

The special exception of James H. Hopkins rests on a verbal criticism which cannot avail him.  He was awarded a stock dividend which he knew in December 1868.  He refused to surrender it to another party who claimed it and he still holds it. He contends that the liability under the Ohio statute is confined to stock *subscribed,* and as his stock was not subscribed, he is not responsible.  The language of the constitution of Ohio, as we

have seen, is "stock owned," and it is plain that the statute is subordinate to the constitution, and must be construed in conformity with it.

It remains to consider Fawcett's Appeal. He urges that the court below was in error in holding that as representing the Pittsburgh syndicate, he was bound to account for the profits of the purchase of the personalty made in the names of Breed and Frew, at the sale of the assets of E. Ball & Co. It is not a matter in dispute that the sale of these assets by the authority of the directors was proper and even necessary—that the nature of these assets, being principally small debts scattered over all the states of the Union, was such that they could not practically have been realized in any other way—that the sale was fair and open—that it was largely advertised—special notice sent to every stockholder—and full oppportunity given to every one to bid. If there is any case in which such a sale can be upheld as against cestuis que trustent, it would seem to be this case. Ashhurst's Appeal, 10 P. F. Smith 290, is strongly relied on by the counsel for the appellant. That case, however, was decided on its peculiar circumstances—principally the laches and long-continued acquiescence of the cestuis que trustent. There the sale was in 1857 and the bill to impeach it not filed until 1865. It was held that if a trustee to sell becomes the purchaser, the purchase is generally voidable, but the cestui que trust must move in a reasonable time. Here the sale was March 31st 1874, and this bill filed March 15th 1875. Non constat that the appellants knew before, that the purchase by Breed and Frew was for the Pittsburgh syndicate. But the principle that a purchase by a trustee at his own sale may, at the election of the cestui que trust, be treated as made for his benefit, is too important to be frittered away by nice distinctions. It is not in dispute that this purchase was made by the Pittsburgh syndicate. It was composed of a number of the stockholders who had associated and advanced money to settle the debts of E. Ball & Co., looking to the liability of all the stockholders for their reimbursement. The other stockholders may not have had the ability to contribute their proportion to make up the large sum of money necessary for this purpose. It ought not, therefore, to prejudice them that they had been repeatedly asked, and even before the master, to join this syndicate, and had declined. All the authorities show that it is not a question of the honesty and fairness of the transaction, but it is put solely on the ground of policy: Webb v. Dietrich, 7 W. & S. 401; Chronister v. Bushey, Ibid. 152; Chorpenning's Appeal, 8 Casey 315. Even in the case of a purchase at a public judicial sale, the same principle applies where the trustee has had any hand in bringing about the sale:

[Huckenstein *v.* Love.]

Parshall's Appeal, 15 P. F. Smith 224.   The members of the Pittsburgh syndicate were joint owners with the other stockholders of the property of E. Ball & Co.   They stood in such a relation to them as to forbid their taking any advantage of their position and ability to purchase : Gibson *v.* Winslow, 10 Wright 380.   It is strongly urged on behalf of the appellant that if it had turned out that the sale was for more than could be realized from the assets—that the purchase eventuated in a loss instead of a profit to the buyers—they could have had no claim to call upon the stockholders to make it good.   It is undoubtedly so ; but this is the case in all such transactions.   The trustee must bear the loss if any, though the cestui que trust is entitled to the profit.

It is believed that we have thus considered and disposed of all the points of any importance in these appeals.

Decree affirmed, and appeal dismissed at the costs of the appellants.