## Cameron Estate

*Donald L. McCaskey*, for estate.

*Ripp, Kelly & Bieno*, for Commonwealth.

RAHAUSER, J., February 28, 1958.—This is an appeal from the assessment of an inheritance tax upon the appraised value of a contract for deferred compensation.

Decedent, Gordon W. Cameron, died on April 29, 1955. At the time of his death he was a vice president and treasurer of the Aluminum Company of America. He had been employed by the company continously since August 1916.

The parties to the appeal entered into a stipulation of the facts as follows:

"1.  ... At the time of his death he was a vice president and treasurer of Aluminum Company of America (hereinafter referred to as Alcoa), a Pennsylvania corporation having its principal office in the City of Pittsburgh, Pennsylvania.

"2. Mr. Cameron began his employment with Alcoa on August 1, 1916, and his employment continued thereafter with Alcoa except for a period during World War I when he served with the United States Army from August 15, 1917, to July 31, 1919.

"3. On November 23, 1953, Alcoa entered into a deferred compensation contract with Mr. Cameron, a true and correct copy of which is attached hereto as

part hereof and marked Exhibit 1. On December 21, 1954, the foregoing contract was amended. A true and correct copy of such amended agreement is attached hereto as part hereof and marked Exhibit 2.

"4. Alcoa paid to Mr. Cameron between November 23, 1953, and April 29, 1955, additional compensation aggregating $50,000.

"5. The value on April 29, 1955, of the payments under the deferred compensation contract to be received by Mary C. Cameron was $38,610.

"6. Mary C. Cameron born on July 2, 1895, and at the death of Gordon W. Cameron was sixty years of age (for insurance purposes). Under the contract payments of $5,000 a year are to be made to Mary C. Cameron for a period of ten years after the death of Gordon W. Cameron. Only if Mary C. Cameron does not survive for the ten-year period are any payments to be made to the estate of Gordon W. Cameron.

> "Donald L. McCaskey
> Smith, Buchanan, Ingersoll,
> Rodewald & Eckert
> Attorneys for the Estate
> of Gordon W. Cameron
> Leo J. Kelly
> Deputy Attorney General
> Commonwealth of Pennsylvania"

The contract and the amendment thereto read as follows: (Here followed the agreement and amended agreement quoted in full.)

Counsel for the estate contends that the appraisal of this contract for inheritance tax purposes is erroneous. He contends that this contract presents an inheritance tax question similar to that raised in the Burke and Enbody Estates, 3 Fiduc. Rep. 344, and that there was no transfer of any rights to the wife of decedent at the time of his death.

The court is of the opinion that the exclusive right to enjoy the payments under this contract passed to the wife of decedent at his death. Prior to his death, under the terms of paragraph 4 * of the amended contract, Mr. Cameron could have destroyed all his widow's rights under the contract by designating some other person as beneficiary. Thus Mr. Cameron's death transferred to his widow the certainty of enjoyment of payments under this contract; this transfer of enjoyment of rights under the contract was subject to the Pennsylvania inheritance tax. The Burke and Enbody Estates cases, supra, were two cases based upon their own particular facts involving two company pension plans in which decedent-employe could merely designate the beneficiary entitled to the unconsumed portion of the trust funds held for his retirement. The employe, prior to retirement, had no incidents of ownership in the funds except the right to select the beneficiary, and the court accordingly ruled that the pension plans therein involved were not taxable under the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, as amended.

It must be borne in mind that the Burke and Enbody Estates cases dealt with pension trusts controlled by written deeds of trust which gave the employe merely

---

* Paragraph 4 of the amended contract reads as follows:

"4. In the event of the death of Gordon W. Cameron prior to or during the ten-year period specified in paragraph 1, and provided that the obligations of Alcoa under this agreement have not then been terminated as provided for in paragraph 3, any of the payments specified in paragraph 1 to be paid to Gordon W. Cameron and then unpaid shall be paid in equal monthly installments, payable on the last day of each month, during a period of ten years after his death to his widow, if living; if not, or upon her death, to his executors and administrators. The provisions of this paragraph 4 may be changed by amendment of this agreement only during the lifetime of Gordon W. Cameron."

the right to designate a beneficiary of the pension fund. This is clearly brought out by the language in both of these cases. In the Enbody case, at page 357, Judge Hunter said:

"By the terms of the deed [of trust controlling the pension trusts] the decedent had no power to assign or anticipate her interest in the trust," and in the Burke case Judge Lefever, in describing the operation of the basic fund trust, said, at page 346:

" . . . Employes forbidden to withdraw or borrow from the Basic Fund and are prohibited from alienation, anticipation and attachment of their interest in the fund. . . ."

In the Cameron case we are not dealing with any "Pension Trust" or "Retirement Plan" or "Profit Sharing Plan," etc., but are merely dealing with a contract between a company and an employe deferring compensation agreed to be paid to an employe so that the employe may gain some benefit by spreading his earned income over a 10 year period. This deferred compensation is actually money due Mr. Cameron and, in effect, became funded by the credit of Alcoa the instant the proper officials of the company voted him additional compensation. This they did on two occasions prior to his death, in the amount of $25,000 each time. The payment of these amounts was merely deferred by the company until termination of Mr. Cameron's employment with the company "whether by death or otherwise," at which time the payments are mandatory, provided the termination of Mr. Cameron's regular employment was due to ill health or other disability or retirement at or after age 65.

The rights under this contract could have been assigned. An "assignment" of a right is a manifestation to another person by the owner of a right indicating his intention to transfer, without further action or

manifestation of intention, the right to such other person or to a third person: A. L. I. Restatement of the Law of Contracts §149(1). The term "right" is defined as including all rights arising under contracts or for breaches of contract, and only such rights: A. L. I. Restatement of the Law of Contracts §148(2)(a). An assignment is possible even though it is conditional, or involves a right expected to arise in the future, under a contract or employment in existence at the time of the assignment: A. L. I. Restatement of the Law of Contracts §§150(2), 154(1), 155; Norris Estate, 329 Pa. 483, and Kuhns' Estate, 163 Pa. 438. It can be said with authority that all ordinary business contracts are assignable, especially rights under a contract. The right to the money earned or to be earned under a contract is assignable.

The Supreme Court in Bush v. Eastern Uniform Company, 356 Pa. 298, at 300, recognized the validity of an assignment of wages and approved Blair v. Kingston Manufacturing Co., 64 Pa. Superior Ct. 506, where Judge Williams said, at page 509:

". . . It does not follow, however, that the claims which arise out of contracts are of such a nature that they cannot be assigned. The cases cited by the appellant in which statutory liability was not enforced, where there had been an assignment of the claim, are easily distinguished. They were all claims in which the original foundation arose ex delicto. Here the claims arose entirely ex contractu. Such claims are assignable and the assignees are invested with all the rights the labor claimants themselves would have had if their claims had not been assigned: Riddlesburg Coal & Iron Co's. App., 114 Pa. 58. Under similar statutes the liabiltiy of stockholders has been held to be contractual: Aultman's App., 98 Pa. 505, 515; Cushing v. Perot, 175 Pa. 66, 73, and analogous to a guaranty; Means'

App., 85 Pa. 75, 79; Patterson v. Wyoming Mfg. Co., 40 Pa. 117, 122. The stockholders, in accepting their stock must be presumed to have agreed to all the conditions imposed by the statute, which relieves them from general liability but imposes this special liability for the payment of wage claims in the event of insolvency."

It is apparent that the right of Mr. Cameron in his deferred compensation contract with Alcoa could have been assigned during his life. He was in complete control of the right to his deferred compensation as long as he lived; immediately upon his death, his widow, for the first time, enjoyed the rights under this contract formerly possessed by her husband. This transfer of rights was subject to the Pennsylvania inheritance tax.

The contract may be looked upon as an "annuity", spread out over a 10 year period, payable in equal monthly installments over that fixed period. By the contract Alcoa has firmly bound itself to pay Cameron, after termination of his employment by death or otherwise, an amount readily determinable, during each year of a 10 year period, in monthly installments, and in the event of his death prior to or during the 10 year period, then to pay said payments to his widow, as beneficiary, and at her death, the balance to his executor or administrator. In such case Alcoa, instead of buying an annuity policy for its employe or a group annuity policy for its employes, saw fit to act as its own self-insurer, with the same effect as if an annuity policy had been purchased.

In Bayer's Estate, 345 Pa. 308, the Supreme Court held that an annuity contract, providing for continuance of annuity payments to a named beneficiary after the annuitant's death, is within the inheritance tax provisions which impose a tax on the "transfer of any property . . . intended to take effect in possession or enjoyment at or after" the death of the transferor. It is

not considered "proceeds of policies of life insurance" and accordingly does not fall within that inheritance tax exemption.

The court said in the Bayer's Estate case, supra, at page 314:

"In the case of the traditional annuity contract, nothing remains to pass at the annuitant's death and therefore there is no transfer to tax. But if the parties to the annuity contract provide, as in this case, that a specified total shall be paid in annual installments but if the annuitant die before receiving the total, the balance shall then pass to his beneficiary, there is a taxable transfer of property because the beneficiary's right does not vest until the annuitant's death and the property transferred, not being the proceeds of policies of life insurance within clause (d), is not within the exemption. See Paul: Federal Estate and Gift Taxation (1942), Vol. 1, sections 10.08 and 10.09."

A decree will be drawn in accordance with this opinion.

### Dissenting Opinion

BOYLE, P. J., July 11, 1958.—Exceptions are filed by the executrix of the will to the decree of the hearing judge entered February 28, 1958, dismissing the appeal of the estate of Gordon W. Cameron, deceased, from the inheritance tax appraisement filed January 22, 1957, by the Commonwealth of Pennsylvania. Exceptions are also filed to the decree of distribution entered March 14, 1958, in which transfer inheritance tax in the amount of $772.20 plus interest thereon in the amount of $86.87 was decreed to the Commonwealth of Pennsylvania.

The two sets of exceptions raise the same question, viz.: Whether the value of the payments required to be made by an employer to the widow of an employe under an employer-employe agreement of which the

widow is a third party beneficiary is subject to Pennsylvania transfer inheritance tax where none of the money payable under the agreement ever became the property of the deceased employe and he had no right or power to assign or otherwise affect the payments to be made to his widow after his death.

The hearing judge held that the commuted value, $38,610, of the monthly payments to be made to the widow under the agreement is subject to transfer inheritance tax and entered a decree dismissing the appeal of the executrix from the appraisement and another decree allowing the tax.

The Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, art. I, sec. 1, as amended, 72 PS §2301, provides as follows:

"A tax shall be, and is hereby, imposed upon the transfer of any property, real or personal, or of any interest therein or income therefrom in trust or otherwise, to persons or corporations in the following cases: . . .

"(c) When the transfer is of property made by a resident . . . by deed, grant, bargain, sale or gift made in contemplation of death of the grantor, vendor, or donor, or intended to take effect in posession or enjoyment at or after such death . . ."

By the way of prefatory observation it appears that the case at bar is not viewed accurately if one accepts the term "deferred compensation" used in the stipulation filed by the parties as a proper description of the money benefits to be paid under the amended agreement of December 21, 1954, between decedent and Aluminum Company of America. Scrutiny of the agreement reveals that the "additional compensation" or bonus paid to decedent after November 23, 1953, was merely *a standard of measurement* of the benefits to be paid to decedent or his widow under the agree-

ment of December 21, 1954. The payments under the agreement are not "deferred compensation."

The only property right which the husband possessed under the agreement was the right to receive payments during his life and after his retirement provided that he complied with the conditions requiring him to serve in an advisory capacity and to refrain from entering the service of a competitor of his employer. Any right of his to receive payments under the agreement ceased with his death.

It is certain that decedent, acting alone under the terms of paragraph 4 of the amended agreement, could not have eliminated Mrs. Cameron's interest. Any change in the agreement could only be made with the consent of the other signatory to it, viz., the Aluminum Company of America. In addition there is the question as to whether Mrs. Cameron is not a third party donee-beneficiary of the agreement whose rights vested at the time of its execution on December 21, 1954, and who cannot be prejudiced by the parties to the agreement without her consent. The courts of Pennsylvania have looked with favor on the rights of donee-beneficiaries under contracts: Brill v. Brill, 282 Pa. 276; Fidelity-Philadelphia Trust Company v. Bankers Life Insurance Company, 370 Pa. 513; Logan v. Glass, 136 Pa. Superior Ct. 221. See also Rhodes v. Rhodes, 266 S. W. 2d 790 (Ky.), where the facts were that an employe and employer made an agreement under which an annuity was to be paid for 10 years to the employe's son if the employe died before age 65. A clause in the agreement permitted renegotiation in view of the possibility of fluctuation in the value of American and British currencies. Subsequently the contract was renegotiated. The employe's salary was increased and the employe's wife was named as beneficiary instead of the son. Upon the death of the employe, before

reaching the age of 65, his widow brought suit to compel payment to her of the annuity. The Kentucky Court of Appeals held that the employer and the employe could not, even acting together, rescind or amend the contract so as to deprive the son of his rights thereunder.

It is true that the coming into possession of her rights was dependent upon the widow's survival of her husband before the expiration of the 10-year term provided in the agreement. But the determining factor in resolving the question before the court is that no property of decedent was transferred by or from *him* to the widow by reason of his death. In Lowry's Estate, 314 Pa. 518, 520, it was held:

". . . The word 'transfer' as used in the title of the Act of 1919, and in the body of the act itself, and in the title of the amendatory Act of 1929, and in the body of that act, has a long established meaning. As applied to property it means that the owner delivers it to another person with the intent of passing the rights which he had in it, to the latter." See also Tack's Estate, 325 Pa. 545.

Decedent's entire property rights under the agreement ceased with his death. He owned no part of any fund which was payable under the agreement. It is this fact which distinguishes the case at bar from Dorsey Estate, 366 Pa. 557, and Bayer's Estate, 345 Pa. 308. As much as decedent could have assigned under the agreement was his right to receive payments during his life. He possessed no right to make an assignment affecting the rights of the widow, Mrs. Cameron: Entwistle v. Travelers Insurance Company, 202 Pa. 141. Any assignment of Mrs. Cameron's rights could only have been made with her consent and the joinder of the Aluminum Company of America.

The distinction between situations where the funds transferred came from decedent and where they came

from somebody else, such as decedent's employer, is well drawn in the Burke and Enbody Estates, 3 Fiduc. Rep. 344. Both of these cases involved payments to be made as directed by a decedent under company pension plans. In both cases the contributions were made by the employer. In the Burke case, to the extent the employe made contributions to the fund, such contributions were concededly taxable. The transfers in issue, however, involved only contributions to the plan made by the employers. Although both employes had the power to designate the beneficiaries who would take the funds if they died before receiving the entire amounts, the Orphans' Court of Philadelphia held that the transfers were not subject to inheritance tax. In both cases the employes had retired and were receiving benefits under the plans at their deaths. The remaining benefits were paid to the beneficiaries designated by them. The cases were decided by separate auditing judges and the court en banc affirmed both cases on the opinions of the auditing judges.

The distinction between having a property right in a fund and having the power to designate the beneficiary is admirably discussed by Judge Hunter where he states:

"The difficulty with the Commonwealth's claim is that it confuses ownership of the fund with the right to designate the beneficiary of it. Conceding that the decedent had the absolute right to designate the beneficiary of the fund, she did not by exercising that right transfer her own property to the beneficiary. She did not own the fund over which she exercised the right, nor did she have the power to acquire it": 3 Fiduc. Rep. 358.

The case at bar is indistinguishable from Burke and Enbody Estates.

The exceptions should be sustained.