# Richmond.

## MOUNTAIN LAKE LAND CO. v. BLAIR.

### January 14, 1909.

1. CORPORATIONS — *Foreign Corporations—Stockholder—Liability for Debts of Corporation—Foreign Law.*—The liability of a stockholder in a foreign corporation for the debts of such corporation is to be determined by the laws of the State of incorporation.

2. CONFLICT OF LAWS—*Laws of Sister State—Presumption.*—In the absence of proof as to the laws of a sister State of the Union, having the common law as the basis of its system, it will be presumed that the common law prevails there, and the rights of the parties will be determined upon common law principles. The courts of this State will not take judicial notice of the laws of a sister State at variance with the common law, but, upon common law questions, will presume that the common law of a sister State is similar to that of their own.

3. CORPORATIONS—*Liability of Stockholders to Creditors—Assignee of Stockholder.*—Creditors of a corporation may compel payment of the stock subscribed for, so far as it is necessary to satisfy debts by the company. The whole subscribed capital is a trust fund for the payment of creditors when the company becomes insolvent. Not only is the original subscriber liable, but a transferree of stock, with notice that it has not been paid for, is liable to the same extent as the original holder. He succeeds to the liabilities as well as the rights of the transferree.

4. CORPORATIONS—*Resident Stockholder of Foreign Corporation—Liability for Debts of Corporation.*—A resident creditor of a foreign corporation may enforce in this State the liability of a resident stockholder upon his subscription to the stock of said corporation in a court having jurisdiction over such stockholder. The liability rests upon contract, and may be enforced in any court having jurisdiction of the stockholder.

5. CORPORATIONS—*Resident Stockholder in Foreign Corporation—Liability for Debts—Domestic Affairs of Foreign Corporation—Parties—Contribution.*—A suit by a resident creditor of a foreign

corporation against a resident stockholder of such corporation to collect a debt out of the stockholder's unpaid subscription is not an interference with the domestic affairs of a foreign corporation. Other stockholders, if any, and other creditors of the company, if any, are not necessary parties to the suit. Nor is it necessary to wind up the foreign corporation in order to enforce such liability. The liability of the stockholder is several, and not joint. The defendant cannot complain that others equally liable are not sued. If he is compelled to pay more than his proportionate share of the debt asserted, he can compel contribution from the remaining stockholders.

6. Foreign Corporations—*Equitable Assignment of Whole Stock—Debts of Corporation—Liability at Law.*—A transfer of the stock of a foreign corporation to one person to be held for the benefit of another fastens upon the latter an equitable liability for the debts of the company, but confers no liability which can be enforced against him at law.

7. Corporations—*Unpaid Stock Subscriptions—Effect of Section 1103a, Code 1904.*—The only questions committed to the jurisdiction of the common law courts by section 1103a, Code 1904, relating to the enforcement of unpaid stock subscriptions in joint stock companies are those involving the validity of the subscriptions of resident subscribers. The statute has no application to a suit brought by a resident creditor of a foreign corporation who is attempting to enforce the equitable liability of a resident stockholder in such corporation. All that was intended to be accomplished by the statute was to deprive courts of equity of the jurisdiction which they formerly exercised, in winding up insolvent domestic corporations, in enforcing the liability of stockholders for their subscriptions, and to restrict the bringing of actions on the contract of subscription to the courts of law. Apart from this, the statute leaves the jurisdiction of courts of equity unimpaired.

8. Equity Pleading—*Vacation Decree — Subsequent Ratification.*—Although a decree may have been entered by a judge without authority in vacation, if, at a subsequent term, the court, with full jurisdiction of the subject-matter and the parties, "ratifies, approves, confirms and adopts" the vacation decree, it then becomes the decree of the court, and will not be disturbed if no prejudicial error is discovered therein.

9. Equity Pleading—*Numerous Exceptions—Overruling in Gross.*—It is not error for a trial court to refuse to pass specifically and directly on numerous exceptions to evidence and the report of

a commissioner in chancery, and its decree overruling all such exceptions, in a general way, will not be disturbed where it appears that the conclusion reached is correct, and there is sufficient evidence, free from all reasonable objection, to sustain said conclusion.

10. COMMISSIONER IN CHANCERY—*Judicial Officer—Report—Assistance of Parties.*—A commissioner in chancery is a *quasi* judicial officer, and his work should be free from all suspicion of being improperly influenced or interfered with by any party to the suit, or his agent. He should not allow an agent of a party to take any part in the preparation of his report, or papers returned as a part of such report. In the case in judgment, the paper filed with the report was not a finding of the commissioner, and was only useful as an aid in examining the great volume of evidence to which it refers. The evidence is all in the record, and can be examined without the aid of the paper, and hence no injury was suffered by reason of its return with the report.

Appeal from a decree of the Circuit Court of the city of Roanoke. Decree for complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Williams & Williams, John R. Johnson,* and *W. R. Thompson,* for the appellant.

*Robert E. Scott, Samuel A. Anderson, M. H. Attizer* and *Abram P. Staples,* for the appellee.

HARRISON, J., delivered the opinion of the court.

This foreign attachment suit in equity was brought by the appellee, Gertrude Blair, to hold the appellant liable to her for certain indebtedness due to her from the Mountain Lake Lumber Company.

A demurrer to the bill was properly overruled and the cause

was referred to a commissioner to take evidence and state certain accounts. In response to this order, a report was filed, finding the appellant liable to the appellee for the claim asserted by her.

From a decree confirming this report, the present appeal has been taken, bringing before us a record of more than eleven hundred printed pages, containing a mass of documentary evidence, depositions, affidavits, statements, etc., much of it irrelevant and throwing little or no light upon the questions at issue. From this mass of matter we have ascertained the following material facts, which we find to be satisfactorily established by competent evidence:

The Mountain Lake Lumber Company was a foreign corporation doing business in this State. It was organized under the laws of West Virginia, with a capital stock of $500, upon which ten *per cent.*, aggregating $50, was paid at the time of its organization. By its charter this company had the power to increase its stock to $1,000,000. This power was exercised, and additional stock to the amount of $999,500 was issued to its officers, directors and their connections, nothing being paid thereon by any of them. This entire issue of stock was subsequently transferred to Frank Woodman for the use and benefit of the Mountain Lake Land Company, the appellant, a Virginia corporation. By virtue of its ownership of this stock, the appellant took possession of and converted to its own use all the assets of the Mountain Lake Lumber Company, the debtor of the appellee, who was the owner by assignment of its obligations to the amount of $26,902.45, with interest, subject to certain credits.

These facts being established by the record, we have to inquire, whether the appellant company is liable to the creditors of the Mountain Lake Lumber Company, and, if so, was it proper in this case, on a bill in equity, to decree against the appellant, the home defendant, in favor of the appellee, hold-

ing the established obligations of the Mountain Lake Lumber Company.

The appellant company having become a stockholder in the Lumber Company, a West Virginia corporation, its liability to creditors of that company must be determined by the laws of West Virginia; and it is contended, that the law of West Virginia on this subject is not averred in the bill nor proven in the cause, and therefore cannot be considered.

There is no express averment in the bill as to the law of West Virginia on the case there made, but the bill alleges a state of facts under which the liability of the defendant is to be determined by those laws. In the absence of proof as to the law of West Virginia, the court will presume that the common law prevails there, and will determine the rights of the parties according to the principles of the common law. The courts of this State will not take judicial cognizance of the laws of our sister States at variance with the common law, but upon common law questions the legal presumption is that the common law of a sister State is similar to that of our own. *Houghtaling* v. *Ball,* 19 Mo. 84, 59 Am. Dec. 331; *Stewart* v. *Conrad,* 100 Va. 128, 40 S. E. 624; *N. & W. Ry. Co.* v. *Denny,* 106 Va. 383, 56 S. E. 321. This case must, therefore, be decided according to the principles of the common law.

The next question is whether the appellant company, as transferee of the stock of the Mountain Lake Lumber Company, and the resultant beneficiary of its assets, is liable at common law to the creditors of that company.

The law is well settled that the creditors of a corporation may compel payment of the stock subscribed, so far as it is necessary for the satisfaction of the debts due by the company. This results from the fact that the whole subscribed capital is a trust fund for the payment of creditors when the company becomes insolvent. Thompson on Corp., Vol. 2, secs. 1562-66, 78-9, 82; Beach on Private Corp., p. 226, sec. 118; Morawetz Private Corp., Vol. 2, secs. 820-1; *Scoville* v. *Thayer,* 105

U. S. 143, 26 L. Ed. 968; *Handley* v. *Slutz,* 139 U. S. 417, 35 L. E. 227, 11 Sup. Ct. 530; *Potts* v. *Wallace,* 146 U. S. 689, 36 L. Ed. 1135, 13 Sup. Ct. 196. This doctrine has been sanctioned and followed in the case of *Martin* v. *South Salem Land Co.,* 94 Va. 28, 26 S. E. 591.

It is quite as well established that the transferee of such stock, with notice that it has not been paid for, which the appellant in this case had, is liable to the same extent as the original holder. The transferee succeeds not only to the rights but also to the liabilities of the transferor, and in the event of the insolvency of the corporation, he is liable to contribute to the payment of its debts in like manner as if he were an original subscriber. Thompson on Corp., Vol. 3, sec. 3222; *Merrimac Mining Co.* v. *Levy,* 54 Pa. 227, 93 Am. Dec. 697; *Huggins* v. *Bank,* 193 Ill. 400, 61 N. E. 1026; *Webster* v. *Upton,* 91 U. S. 70, 23 L. Ed. 384; *Pullman* v. *Upton,* 96 U. S. p. 328, 24 L. Ed. 818.

After pointing out that it is settled law that whatever has not been paid on the stock of a corporation, and which ought to be paid, is a trust fund out of which corporate creditors have a right of payment prior to the holder of the stock, Mr. Thompson says that, "in affording relief to creditors of corporations on this ground, courts of equity proceed on the familiar principle that whoever is found in the possession of a trust fund, under circumstances which charge him with a knowledge of the trust, is bound to account as trustee to those beneficially interested in such fund." 3 Thompson on Corp., secs. 2956-7.

We shall now consider the question whether a Virginia court of equity, having jurisdiction of the real owner of the stock of a foreign corporation, can enforce against the holder of such stock a liability in favor of a creditor residing in this State; it being contended that, inasmuch as the Mountain Lake Lumber Company is a foreign corporation, the courts of this State can-

not enforce the liability of one of its stockholders, even though that liability be to a creditor residing in Virginia.

As already shown, the rights and liabilities of a stockholder in a foreign corporation are fixed by the law of the domicile of the corporation, and he must be held to have contracted with reference to the laws of the State under which the corporation was organized; but it does not follow that his liability as such stockholder cannot be enforced by the courts of the stockholder's domicile, for such liability rests upon contract, and upon familiar principles such a right will be enforced by the courts everywhere: provided that jurisdiction of the party ultimately liable can be obtained.

The law on this subject is very clearly stated by Beach in his work on Private Corporations, Vol. 1, sec. 148. He says: "When a person becomes a stockholder in a corporation organized under the laws of a foreign State, he must be held to contract with reference to all the laws of the State under which the corporation is organized, and which enter into its constitution; and the extent of his individual liability as a shareholder to the creditors of the company must be determined by the laws of that State, not because such laws are in force in the other State, but because he has voluntarily agreed to the terms of the company's constitution. It is equally clear upon both principle and authority, that this liability may be enforced by creditors wherever they can obtain jurisdiction of the necessary parties. This does not depend upon any principle of comity, but upon the right to enforce in another jurisdiction a contract validly entered into."

Discussing the liability of a resident stockholder of a foreign corporation, Thompson on corporations says: "If the liability of a resident stockholder of a foreign corporation rests in contract merely, as in the case of the obligation to pay for shares of stock which he enters into, who has subscribed for them, or who has purchased them from a subscriber or holder, before payment, and if the obligation thus assumed is

valid and subsisting, according to the law of the domicile of the corporation, it will be good everywhere, and upon obvious principles will be enforced in the courts of every other State or country." 3 Thomp. on Corp., sec. 3047.

Again it is said: "It may be confidently stated that where the foreign corporation has property situated within the domestic jurisdiction, the road is open to proceedings *in rem* in the domestic tribunals against such property, on the part of creditors and others having claims against it, whether such persons be residents or non-residents. Where the creditors or claimants against the property are domestic citizens or *residents,* the jurisdiction is undoubted; and where they are *non-residents* the grounds of jurisdiction seem to be equally clear." 6 Thompson on Corp., sec. 8059.

Morawetz on Corporations is to the same effect. This author says: "It seems clear upon principle that a creditor of a corporation whose shareholders are individually liable for its debts, may maintain a suit to enforce their liability, wherever he can obtain jurisdiction over the necessary parties." After stating that the right to maintain such a suit does not depend upon the comity of the State where the suit is brought, but upon the willingness of the courts to enforce a foreign contract, he says: "A refusal to grant a remedy in a case of this kind would not be a refusal to enforce a foreign law, it would be simply a denial of justice." 2 Morawetz on Corp., sec. 875.

The doctrine laid down by these authors is fully sustained by the adjudicated cases. *Nimick* v. *Iron Works,* 25 W. Va. 198; *Crofoot* v. *Thatcher,* 19 Utah, 212, 57 Pac. 171, 75 Am. St. 725; *Guernsy* v. *Moore,* 131 Mo. 65, 32 S. W. 1132; *Aultman's Appeal,* 98 Pa. 505.

It is further contended that the Mountain Lake Lumber Company being a foreign corporation, the courts of this State have no control over it because such courts have no power to

interfere with the. domestic affairs of a foreign corporation, and therefore has no power to wind up or administer its assets.

It is a sufficient answer to this contention to say that it is not the object of this suit to interfere with the domestic affairs of a foreign corporation or to wind up its affairs. The suit is brought by a Virginia creditor of the foreign corporation against the appellant company, a domestic corporation owning practically all of the stock of the foreign corporation which has not been paid for, to enforce the satisfaction of her claim out of what the appellant owes on the stock held by it, which is a trust fund in its hands for the benefit of the creditors of the foreign corporation.

It is well settled that the other stockholders, if any, and the other creditors of the company, if any, are not necessary parties to a suit to enforce the liability of a stockholder in favor of a creditor. Nor is it necessary to wind up the foreign corporation in order to enforce such a liability. In such a case the liability of the stockholder is several and not joint. The appellant company cannot complain that others equally liable with it are not sued. If in this proceeding the appellant is required to pay more than its proportionate share of the debt asserted, it may in an action against the remaining stockholders require them to contribute their fair share. *Thompson* v. *Reno Savings Bank,* 19 Nev., 9 Pac. 121, 3 Am. St. 797-803; *Hatch* v. *Dana,* 101 U. S. 210, 25 L. Ed. 885; *Ogelvie* v. *Knox,* 22 Howard 382, 16 L. Ed. 389; *Aultman's Appeal, supra.*

In the light of the authorities cited, it is clear, that in this case the circuit court had the power to enter the decree complained of.

But it is contended that it was precluded from doing so by the Virginia statute, Acts 1897-8, p. 16, Va. Code 1904, sec. 1103.

We are of opinion that this act has no application to a case like the one under consideration. In the case at bar, the stock

of the foreign corporation was transferred to and is now held by Frank Woodman, a non-resident of Virginia, and a suit against him, the legal holder of the stock, is expressly excluded by the terms of the act. It is true that the transfer of these shares to Woodman was for the benefit of the appellant company, and that by means of such transfer appellant has possessed itself of all of the assets of the foreign corporation; yet these facts, while they fasten upon appellant an equitable liability for the debts of the company, confer no liability which can be enforced at law against the appellant. The right of action at law upon the contract of subscription, the one contemplated by the act in question, would be against Woodman, the holder at law of the stock, who is a non-resident and therefore excepted from the act.

The action contemplated by the statute is one for the unpaid subscription to a joint stock company, a purely legal demand. The only questions committed to the jurisdiction of the common law courts by the express terms of the act are those involving the *validity* of the subscription, requiring such actions to be brought at the home of the defendant. The answer of the appellant in this case avers no defense going to the validity of the subscription; it does not deny the issue of the stock as charged, nor the transfer thereof to Woodman. The only defense made by the answer of the appellant is a denial of the facts showing its equitable liability.

When the proof is considered, the utter inapplicability of the statute invoked in easily seen. Prior to the passage of this act, it was the practice of courts of equity, in winding up insolvent domestic corporations at the instance of creditors, when asked to do so, to convene all the stockholders of such companies, and not only levy assessments upon the unpaid stock sufficient to pay the debts, but at the same time compel each individual stockholder, by a decree in the cause, to pay the amount thus assessed, thereby determining both the ques-

tion as to the validity of the subscription and the amount payable thereon, questions which, if raised under other circumstances, were cognizable only at law. All that was intended to be accomplished by the statute was to deprive courts of equity of this concurrent jurisdiction with courts of law in the enforcement of the legal right, and to restrict the bringing of actions upon the contract of subscription to the law court. Apart from this purpose of the act, it leaves courts of chancery with their jurisdiction unimpaired. *Reed* v. *Gold,* 102 Va. 37, 45 S. E. 858.

If this act was ever intended to apply to foreign corporations, or to any other than to domestic joint stock companies, which we gravely doubt, it was clearly never intended to apply to a case like the one before us, where a resident creditor of a foreign corporation is attempting to enforce the equitable liability of a domestic corporation to satisfy her claim.

It is contended that Judge Saunders was without jurisdiction to determine this cause by the vacation decree entered by him on the 23rd day of August, 1906—that his powers in the premises had then expired.

It appears that Judge Saunders, who was holding the Circuit Court of Roanoke city, by appointment, during the disability of Judge Blair, who presided over that circuit, entered a decree at the February term, 1905, under section 3427 of the Code, making this cause, of his own motion, a vacation cause. The matter was under consideration by him until August 23, 1906, when he rendered the decree complained of. While Judge Saunders had the cause under consideration Judge Blair died, and Judge W. W. Moffett was duly elected and qualified as his successor.

It is not necessary to pass upon the question of Judge Saunders' power to enter the vacation order of August, 1906, for the reason that on the 28th day of September, 1906, at a regular term of the court, presided over by the duly elected

and qualified judge thereof, having full jurisdiction of the subject matter and the parties, a decree was entered "ratifying, approving, confirming and adopting," the decree of Judge Saunders as the decree of the court. This decree of the September term, 1906, being a decree of a court of competent jurisdiction, it follows that if the decree of Judge Saunders was invalid because he was without jurisdiction to enter it at the time he did, this action of the court in term time made Judge Saunders' decree the decree of the court, and it will not be disturbed if this court can see from the whole record that there is no error of which the appellant can complain.

During the progress of the taking of depositions, numerous exceptions were noted by counsel for the appellant, and the court was asked to pass specifically and directly upon each of such exceptions. This the court declined to do, and overruled all of such exceptions in a general way. This is assigned as error.

These exceptions are too numerous to mention. They are for the most part without merit. There was sufficient evidence which was free from all reasonable objection to sustain the conclusion reached, and therefore the court was entirely right in declining to pass upon these multitudinous exceptions in detail.

There is a like assignment of error with respect to numerous exceptions taken by appellant to the report of the commissioner. The court declined to pass upon each of these exceptions separately and in detail, and being of opinion that none were well taken overruled them.

This action of the court was in accordance with the settled practice, and is free from error. We have examined these exceptions and concur in the conclusion of the circuit court, that they were not well taken, and were, therefore, properly overruled.

The commissioner filed with his report an analysis of the evidence, or a series of references to the evidence, upon which

he based his conclusions. This analysis is the subject of exception, and the court was asked to suppress it and strike it from the record, upon the ground that the commissioner should only have reported upon the facts submitted to him; and, upon the further ground, as alleged, that the so-called analysis of the evidence was the work of one W. J. Blair, the agent of the appellee in the conduct of her case. The court declined to strike out this paper, and its action in this regard is assigned as error.

There was no objection to the commissioner filing with his report an analysis of the mass of evidence that had been submitted to him. It was, however, not proper for him to allow the agent of the appellee to take any part in the preparation of this paper. A commissioner is a *quasi* judicial officer, and his work should be free from all suspicion of being improperly influenced or interfered with by any party to the suit, or by the agent of any such party. In the case at bar, however, it is immaterial whether this paper is included with or considered a part of the report. It is not the findings of the commissioner and is only useful as an aid in examing the great volume of evidence to which it refers. That evidence is all in the record and can be examined without the aid of this so-called analysis, and, therefore, the appellant has suffered no prejudice by the courts refusal to strike it from the record.

There are other minor objections to the rulings of the court during the progress of this cause. We will, however, not prolong this opinion to discuss these objections in detail. It is enough to say, that each of them has received full consideration, and they disclose no error prejudicial to the rights of the appellant, and their formal disposition could have no possible effect upon the result reached in the case.

On the whole case, there is no escape from the conclusion that the appellant company is liable to the appellee, a creditor of the Mountain Lake Lumber Company, and the decrees complained of must be affirmed.

*Affirmed.*