# CHARLESTON.

MISHAWAKA WOOLEN MFG. CO. *v.* ELMER NELSON *et al.*

Submitted May 13, 1924.    Decided June 6, 1924.

1. CREDITORS' SUIT—*Allowance of Costs in Judgment Lien Creditor's Suit Held Not Erroneous.*

   Where in a judgment lien creditors' suit, upon the application of the judgment debtor, the court appoints a special receiver of certain lands of the judgment debtor which are sold by him and converted into cash, it is not error for which the debtor can complain to direct the special receiver out of the funds in his hands to pay costs necessarily incurred to bring the case on to final decree, such as procuring certified copies of deeds and other papers, costs which the court can see must ultimately be paid out of the debtor's property. (p. 619).

2. EQUITY—*Commissioner Need Not Give Additional Notice in Taking Account of Liens and Priorities Unless Directed.*

   A commissioner in chancery in taking an account of liens and their priorities under section 7, chapter 139, Barnes' Code, 1923, need not give notice to the parties or lienors other than in the form and as prescribed by that section, unless the court ordering the account directs that additional notice be given. (p. 619).

3. SAME—*Notice Required Given by Commissioner to Lienholders Need Not Set Out All Names of Parties or State All Matters on Which He Was Required to Report in Absence of Specific Direction.*

   Where the court in referring a cause to a commissioner directs him to give the notice to lien-holders as prescribed by section 7, chapter 139, Code, and also to give notice to the parties of the time and place of beginning by him of the execution of the order of reference by publication in a newspaper, such notice to the parties need not, in the absence of specific direction therefor, set out all the names of the

96 W. Va.

parties or state all the matters upon which he is required to report. (p. 619).

4. SAME—*Commissioner in Chancery Quasi Officer; All Findings Reported by Commissioner in Chancery Should Be His Alone; Objections to Correct Report of Commissioner in Chancery Because Attorney of One of Parties Renders Mechanical Assistance in Preparation of Report Should be Overruled.*

A commissioner in chancery is a quasi-judicial Officer; all the findings reported by him should be his alone. But if the attorney for one of the parties renders him assistance in the mechanical preparation of his report, or aids him in putting it into form, exceptions to it based upon the rendering of such assistance should be overruled, where the findings are correct. p. 621).

5. CREDITORS' SUIT—*Before Directing Sale of Debtor's Land to Discharge Liens Court Should Ascertain All Particulars With Certainty.*

A court before directing the sale of a debtor's lands to discharge liens thereon, should ascertain with certainty the name of each lienor, the amount of each lien with interest, its character and priority; so that the total lien debts may be readily known by all parties in interest in order to enable them to bid intelligently at the sale. (p. 623).

6. SAME—*Appointment of Plaintiff's Attorney as Special Commissioner to Make Sale Held Not Erroneous; Defendant Not Entitled to Have Own Attorney Appointed Co-special Commissioner to Protect His Interest at Judicial Sale.*

In decreeing a sale of lands in a judgment lien creditors' suit, it is not error to appoint plaintiff's attorney as special commissioner to make the sale; the defendant is not entitled to have his own attorney appointed as a co-special-commissioner in order to protect his interests at the sale. (p. 627).

Appeal from Circuit Court, Boone County.

Suit by the Mishawaka Woolen Manufacturing Company and others against Elmer Nelson and others. From a decree for plaintiffs the named defendant appeals.

*Reversed and remanded.*

*Murphy & Bratton,* for appellant.
*John B. Hager* and *Leftwich & Shaffer,* for appellees.

MEREDITH, PRESIDENT:

This is a judgment lien creditors' suit brought to subject the lands of Elmer Nelson to the payment of the liens thereon. He appeals and assigns various errors.

Defendant answered the bill and among other things stated that he owned an interest in what is known as the McDorman land; that a dispute had arisen in respect to the surface thereof, but it was about to be compromised and he asked, that a special receiver be appointed for his real estate, with authority to sell at private sale some of his most valuable properties, and especially his interest in the McDorman tract. The court did appoint a special receiver of Nelson's interest in the McDorman tract; it was sold, and the net proceeds therefrom, after the payment of a claim for counsel fees in connection with the sale amounted to $3,000.00. The cause was referred to a commissioner in chancery to take and state an account, showing the debtor's lands, the liens thereon with their priorities, with direction "to publish notice of the time and place of making said report by publication as required by law for four weeks in some newspaper published in this county, and shall convene the lien-holders as required by chapter 139, section 7 of the Code." The commissioners made a report, which, upon exceptions thereto by the defendant Nelson, was recommitted. At the same time the court authorized the special receiver out of the $3000 then in his hands to use sufficient of that fund, not exceeding $250.00, to pay the costs of procuring and producing before the commissioner certified copies of deeds and other evidence whereon to found his report.

Defendant's first assignment of error is as to this allowance. No items were paid which ought not to have been paid. They would ultimately have been decreed as first liens on defendant's property as proper items of cost. The court had control of a fund which could properly be used for that purpose. No creditor complains because of a depletion of that fund; certainly the debtor can not. The amount actually expended was less than $100.00. The objection is unfounded.

The second objection is that the notice given to the parties

by the commissioner does not conform to the decree of reference. The commissioner published two notices,—one to the parties and the other to lien-holders. The lien-holders' notice is in the form prescribed by section 7, chapter 139, Barnes' Code, 1923. No objection is made or could be made to the notice to lien-holders as it complies in every respect with the statute. That section says that the publishing and posting of such notice to lien-holders in the form prescribed, in the manner set out therein, "shall be equivalent to the personal service thereof on all persons holding liens on any such real estate, unless the court shall in the decree directing such notice to be so published and posted otherwise order." Did the court in this case order any different notice? The decree referred the cause to Commissioner L. P. Hager with instructions to take, state and report: (1) all the real estate of defendant Nelson, where situate, its description, and quantity; (2) all the liens thereon, with their priorities; (3) whether the real estate would in five years rent for sufficient amount to pay such liens; and (4) any other pertinent matters. He was directed before proceeding to take the account to "publish notice of the time and place of making the said report by publication as required by law for four weeks in some newspaper published in this county and shall convene the lien-holders as required by chapter 139, section 7 of the Code of West Va." The notice of taking the account which was duly published and posted reads:

"COMMISSIONER'S NOTICE OF
TAKING AN ACCOUNT.
COMMISSIONER'S OFFICE
MADISON, W. VA.

September 4th, 1923.

The parties in the suit of Mishawaka Woolen Mfg. Co., et als.
vs.
Elmer Nelson, et als.

Will take notice, that on the 8th day of October, 1923, at my office in the town of Madison, Boone County, West Virginia, I will proceed to execute the decree rendered in said cause by the Circuit Court of Boone County, West Virginia, on the 9th day of May, 1923, when and

where they are required to attend with such books, papers, vouchers and evidence, as will enable me to comply with the said order of the court.

L. P. HAGER,
Commissioner in Chancery.''

The statute does not require any such notice, the lien-holders' notice being the only notice required; but the court may and usually does require the commissioner to give a notice to the parties of the time he will begin the execution of the order of reference. Generally, the commissioner in pursuance of such an order, includes in such notice an abstract from the decree, stating the matters upon which he is to report. Frequently the commissioner will name every party to the cause, to the great expense of the debtor, and often at the expense of creditors whose claims are left in part unpaid. The parties at this stage are already in court, if summoned. They should thereafter take notice of the progress of the cause. There is no necessity of naming each party in such notice. They know the style of the cause, and a notice in the form here is sufficient to acquaint them with what is going on. Nor do we see any need for the commissioner to state an abstract of what he is to report. He refers to the decree and any party can readily find out what is to be done. No person other than the judgment debtor complains here. He appeared and testified before the commissioner, and of course could not complain for want of notice. What we have said is not for the purpose of meeting his objection to the notice, for there is no basis for that, but rather to call attention to the fact that great expense might be avoided in suits of this character by omitting from such notice the names of numerous parties and long statements from decrees of reference, unless they are specifically required by the court's order. Better practice would omit all notice but that to lien-holders. Perhaps, in that case, however, there should be some reference in the notice to the style of the suit in which the order of reference is made in order to better advise the parties.

The third objection is that Attorney Shaffer who is counsel for plaintiffs and other lien creditors aided the commissioner in the performance of his duties in the preparation of the

report. It appears from the testimony of the commissioner taken in open court that he had no stenographer; attorney Shaffer had one and offered to allow the commissioner to dictate his report to her and have her put it into type-written form. In order to expedite the work, it was agreed that the attorney should dictate to her, as she was familiar with his dictation, so most, if not all of the report, was dictated by the attorney. Part of the time the commissioner was not present while the dictation was going on. However, the commissioner testifies that all of the findings were his. It appears that he had made his calculations and notations of liens and priorities. Indeed, there is no controversy over any lien or its priority. The attorney did devise a scheme or plan of numbering the liens and the corresponding tracts of land, for the purpose of shortening the report and the decree to be based thereon, which plan was adopted by the commissioner, but there is no evidence that he attempted to influence or did influence the findings of the commissioner in any respect. Indeed, we find no instance in which there is any room for controversy over any reported lien. True, as held in *Mountain Lake Land Co.* v. *Blair,* 109 Va. 147, 63 S. E. 751, a commissioner is a quasi judicial officer, and his report should not only purport to be but in fact should be made by him and by him alone. Of course, it would be improper for an attorney or agent of one of the parties to substitute his judgment for that of the commissioner upon any controverted matter. It was held improper in the Virginia case above cited for the commissioner in making his report to submit therewith an analysis of voluminous evidence, which analysis had been prepared by the agent of the successful party, but it was not error for the trial court to refuse to strike it out, as all the evidence was in the record and could be examined by the court without the aid of the analysis. This is certainly carrying the matter a long way, as any attorney in the cause would have the right to file his brief of the law and facts with the commissioner and have it considered by him. If the commissioner did weigh and consider it, it could not be said that he was improperly influenced if his findings were correct. The object of a brief is to influence the mind of the commissioner or court to whom it is addressed; to appeal to his reason and

judgment. If it does not do that it is worthless. We can not approve the practice of a commissioner allowing another to dictate his report, but there was nothing done by the attorney in this case which would warrant a reversal. The liens and priorities as reported are not contested. The defendant has not been prejudiced. Of course, it is important for a commissioner not only to avoid misconduct but the very appearance of it, as there are always persons ready to criticise and to misconstrue decisions that are adverse to their interests.

A fourth objection is that the decree is unintelligible. It first ascertains the various parcels of real estate owned by the judgment debtor. There is no question as to the description. It then lists in great detail the lien debts and shows to what parcels the respective liens apply. The amount of each lien is not fixed,—that is, the interest has not been calculated in any instance and added to the principal, and this amount carried into decree as it should have been done. There is no doubt, however, that any intelligent person who can reckon interest can from the data in the decree determine the total amount of each debt and the properties upon which it is a lien. The usual and proper practice is for the commissioner to whom the cause is referred to calculate the interest on each debt to the first day of the term of court next following the completion of his report, and report the totals as of that date. The decree of confirmation then regularly follows; consequently all the liens in such a decree would thereafter bear interest from the same day. But in the present decree no two liens bear interest from the same date. They are decreed with interest from their due dates or from which interest is payable, or from the dates to which interest has been paid. For this reason it would require a long and laborious calculation to determine the total amount of the lien debts, as this no where appears either in report or decree. We fully realize it is easy to criticise another man's work and not always easy for the critic to do it himself as he would have it done. We would not willingly be captious about it, but we feel that where there are so many items as in this case, many of which are reported subject to specified credits as of certain dates, the commissioner should have made his calculations and reported the aggregate amount of principal and

interest due and the calculations of interest should have run to the same date on all.

For example, take lien No. 8, which is described in the decree as follows:

"A Deed of Trust dated May 1, 1922, executed by Elmer Nelson and wife, to F. P. Murphy, Trustee, and recorded in Trust Deed Book No. 8, page 475. It conveys:

"One-eleventh undivided interest in the Mud River lands containing 872.26 acres hereinbefore referred to, the interest hereby conveyed being the interest conveyed to Elmer Nelson by Sylvester Nelson and wife by the Deed hereinbefore referred to.

"First. To secure the payment of a note for the sum of $175.00 payable to C. R. Mitchell.

"Second. To secure the payment of a note for the sum of $220.00, executed by Elmer Nelson, dated October 1, 1921, and payable to the order of D. A. Smoot, with interest from date; also to secure any renewal of said note.

"Third. To secure and save harmless J. M. Hatfield as endorser on a note for the sum of $475.00, executed by Elmer Nelson, February 21, 1922, and payable to the order of Mary E. Mitchell, with interest from date; also to secure any renewal of said note.

"The note aforesaid to C. R. Mitchell has been paid in full.

"The note aforesaid to D. A. Smoot is subject to a credit of $12.00 as of August 1, 1922, and a credit of $3.71 as of November 4, 1922, and the balance, with interest, is yet due and unpaid.

"The note to Mary E. Mitchell is subject to the following credits:

$15.00 paid February 21, 1922.
$15.00 paid February 28, 1922.
$13.00 paid May 10, 1922.
$25.00 paid February 13, 1922.
$100.00 paid November 28, 1922, and the balance is yet due and unpaid."

What is the amount due upon the debts secured by that trust? It can be determined by calculation, but it was the duty of the commissioner to make that calculation. Calculations are frequently subjects of dispute. Again, the decree does not as definitely and clearly as it should, decree these various liens in favor of creditors by name. It does decree

that Elmer Nelson do "pay unto the several persons and corporations hereinbefore decreed to hold liens against the real estate hereinbefore set out the respective amounts of their said lien debts, as hereinbefore ascertained and adjudicated, with interest and costs as hereinbefore adjudicated", but that is all. There are thirty odd liens, some twenty-two trust liens, some vendor's liens and some judgment liens. Many of the trust liens are substantially similar in the number of items secured and the partial payments made, to the one quoted above. They are decreed in the same way. In only a few instances is it definitely determined that the note evidencing the debt is held by the party in whose favor the lien was created. The decree should without any uncertainty show the name of each lienor, the amount of his lien, its character and priority. How could a lienor determine the amount he should bid on the property in order to protect his lien? He might be able to calculate the amount of his own and other liens thereon, but in many instances in the case at hand it would not be an easy task.

Another objection raised is that the decree is uncertain in fixing the priorities. The decree describes the lien debts in great detail. These liens are numbered from one to thirty-one. These numbers in themselves do not indicate their priority. That was fixed in another part of the decree as follows:

"Each of the foregoing liens are given, for the purpose of identification, a number which will appear in the left hand column opposite each lien. In fixing the priority of such liens, they are hereinafter referred to by such marginal identification numbers. The ascertainment of priority among the various liens on the real estate above referred to as next hereinafter described, is subject to the later provisions of this decree in regard to taxes, and with such reservations in regard to taxes, as from said report it doth appear, the order of priority of such liens on the said real estate to which they apply is as follows:

"Lot No. 25 in the Court House addition in Madison,—

First lien No. 21.
Second lien No. 7.
Third lien No. 22."

96 W. Va.

Following this each parcel of the other real estate by lot number or tract is mentioned and the liens and priorities fixed in the same way, that is by notation of the marginal number only. By way of explanation: "First lien, No. 21" on "lot No. 25 in the County Court House addition in Madison" is a trust lien in favor of Boone County National Bank, for $1191.75, with interest from August 2, 1923, which debt is numbered 21 in a former part of the decree and there fully described. The second lien thereon, being debt No. 7, is a trust lien in favor of A. G. Hager, for $1900, with interest from January 22, 1922, and is numbered 7 and fully described in a former part of the decree; the third lien thereon, being debt No. 22, is a trust lien; the trust secures the endorsers on three notes executed in favor of E. E. White, Cashier, which notes the decree finds have been reduced to judgment in favor of Madison National Bank, and a fourth note in favor of F. T. Miller. These notes are fully described. These four debts or claims are given the number 22. Such was the plan adopted as to all the liens, chiefly to avoid repetition. It is not unintelligible as claimed by defendants' counsel, though we do not approve it. A little extra care in preparing the decree might, and doubtless would, save a great deal of vexations investigation hereafter, but we can not say that upon this ground it should be reversed. We do think, however, that the exact amount due to each lienor, by name, the character, date and priority of his lien should be clearly and definitely stated. As already pointed out the amount of each lien is not calculated. This should have been done and the amount fixed by decree. Generally, that is regarded as certain which may be made certain; the calculations could be made from the decree as it stands; but there is to be a sale of the debtor's properties to satisfy these claims, and in view of the numerous calculations necessary to fix the amounts definitely we think it best to reverse the decree that this may be done. This should be to the best interest of all parties.

The fifth assignment of error is that the Court decreed the sale of defendant Nelson's interest in 872.26 acres of what is known as the "Mud River Lands", describing his interest therein as "seven-elevenths undivided interest in

the surface and six-elevenths undivided interest in the minerals'', while defendant claims the surface of the lands has been partitioned by parol and some of the owners have taken possession of their respective parcels; that the part assigned to him should be sold, not merely an] undivided interest in the whole. No partition deeds were made. It appears that some of the trust deeds executed by Nelson cover his portion of this land, and though made since the supposed parol partition, they describe it as his undivided interest in it. The only evidence of any partition is the testimony of defendant. He files no map, gives no metes or bounds, or any description of the part he claims was assigned to him. The remaining co-owners are not parties to this suit. Under these circumstances we think the court was justified in treating his interest as undivided. If the partition is valid, the purchaser of his interest in the surface will be able to locate and hold the subject of his purchase; and there is no affirmative showing that his undivided interest in the whole will not bring as much in the market as the part he now claims in severalty.

A sixth and final assignment of error is that the court should have appointed defendant's attorney as one of the special commissioners to make the sale. Plaintiff's attorney was appointed sole commissioner. The only reason assigned is that Nelson's attorney would see that his properties are not sold at a sacrifice; but this is not a valid reason. Plaintiff's attorney has as much reason to see that they bring a fair price as has defendant's attorney. The creditors he represents have a greater interest in the properties than Nelson has; besides, the court will at all times see that justice will be done. If it is a question of commissions, and we rather think that that is largely the main point, plaintiff's attorney is entitled to them, as a matter of equity and fair dealing. He brought the suit, prepared the bill, attended the hearings before the Commissioner, prepared the decrees and has borne the burden. To appoint defendant's attorney as co-commissioner under these circumstances would not have been fair; the court's refusal to do so was plainly right.

In order that the decree may be corrected as indicated, it will be reversed and the cause remanded.

*Reversed and remanded.*