COURT OF APPEALS OF VIRGINIA

Present:    Judges Malveaux, Raphael and Senior Judge Petty
Argued by videoconference

MICHAEL R. AGNEW, ET AL.

OPINION BY
v.       Record No. 1724-22-2          JUDGE MARY BENNETT MALVEAUX
                                       APRIL 30, 2024

UNITED LEASING CORPORATION

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Jacqueline S. McClenney, Judge

David C. Reinhardt[1] (Steven S. Biss; Law Office of Steven S. Biss,
on brief), for appellants.

Alexander P.M. Boyd (Nathaniel L. Story; James E. Kane; Hirschler
Fleischer, PC; Kane & Papa, P.C., on brief), for appellee.

Michael R. Agnew and Barbara Agnew appeal from a final decree of the circuit court

approving a commissioner's report and judicial sale and confirming the deed transferring

ownership of their property.  On appeal, the Agnews argue that the circuit court erred in:

(1) denying their motion for reconsideration and to set aside the confessed judgment of United

Leasing Corporation ("ULC"); (2) confirming the property's sale to "Jayne A. Foster-Fair for

FRP, LLC"; and (3) granting the commissioner's amended motion for approval of report and

sale.  For the following reasons, we affirm the circuit court.

PUBLISHED

---

[1] Mr. Reinhardt of Reinhardt Vandenbrook, PLLC, assumed this matter after the parties
had submitted their briefs.

## I. BACKGROUND

"According to well settled principles, we recite the relevant facts in the light most favorable to [ULC], . . . the prevailing party in the circuit court." *Nichols Constr. Corp. v. Va. Mach. Tool Co., LLC*, 276 Va. 81, 84 (2008).

This appeal concerns the real property located at 1309 Taylor's Point Road in the City of Virginia Beach ("the property"), which formerly was the Agnews' home. On June 2, 2000, the Agnews and ULC executed a forbearance agreement to resolve a dispute over how much money the Agnews owed ULC under several leases and a promissory note.[2] *See Agnew v. United Leasing Corp.*, 680 F. App'x 149, 150-51 (4th Cir. 2017). As part of the forbearance agreement, the Agnews consented to a confessed judgment in favor of ULC. *Id.* at 151. The confessed judgment included a lien against the property. *Id.*

By April 2008, the Agnews had not paid ULC the full amount they owed under the confessed judgment. *Id.* ULC filed suit to enforce its lien, and the circuit court referred the matter to a commissioner. *Id.* In October 2009, the Agnews moved to set aside the confessed judgment as void ab initio and dismiss ULC's suit on various grounds. *Id.* In an October 21, 2010 order, the circuit court denied the Agnews' motion. *Id.*

In September 2013, ULC filed a motion seeking approval of the commissioner's report and entry of a decree of sale for the property. Following a hearing on the motion, the circuit court entered a decree on April 25, 2014 directing that the property be sold at public auction. *Id.*

The sale was automatically stayed when the Agnews filed a bankruptcy petition three days prior to the auction. *Id.* The Agnews then sued ULC in bankruptcy court, seeking a determination of the amount they owed ULC and raising the same challenges to the confessed judgment they had

---

[2] AGM Development Corporation, the Agnews' company, was also a party to the forbearance agreement.

raised in the circuit court in 2009. *Id.* The bankruptcy court referred the matter to the federal district court, which granted summary judgment to ULC on November 13, 2015. *Id.*; *see also Agnew v. United Leasing Corp.*, Civ. Action No. 2:14cv525 (E.D. Va. Nov. 13, 2015). The Agnews appealed, and on February 22, 2017, the United States Court of Appeals for the Fourth Circuit affirmed the district court after finding the Agnews' claims "simply meritless." *Agnew*, 680 F. App'x at 155. Following the conclusion of federal litigation, the circuit court appointed a new commissioner to proceed with the property's sale pursuant to the April 2014 order.

On August 14, 2017, the Agnews filed a motion for reconsideration of the circuit court's October 21, 2010 order. Reiterating their arguments from 2009 and relying on the case of *Westlake Legal Group v. Flynn*, 293 Va. 344 (2017), the Agnews argued that service defects rendered the confessed judgment void, and also that "[b]ecause the debt owed to ULC was not fixed, liquidated and/or acknowledged by the Agnews, under *Flynn* the confessed judgment is void." In response, ULC asserted pleas in bar of res judicata and collateral estoppel.

By order dated August 2, 2018, the circuit court denied the Agnews' motion. The court first held that the instant case was procedurally distinguishable from *Flynn*. It also sustained ULC's pleas in bar, holding that because service issues and the confessed judgment's validity had been litigated previously in both the circuit court and the federal courts, those matters were not subject to reconsideration "pursuant to . . . Rule 1:6 Res Judicata Claim Preclusion."

The property was sold[3] at public auction on March 9, 2021 and the commissioner prepared a Memorandum of Special Commissioner's Sale indicating that the purchaser was "Jayne A. Foster-Fair for FRP, LLC." On April 23, 2021, the commissioner filed an amended

---

[3] Prior to the sale, on July 24, 2019, the circuit court entered an amended decree appointing a new special commissioner. On December 1, 2020, the circuit court entered a second amended decree ordering that the property be sold at public auction no later than April 30, 2021.

motion of commissioner for approval of report and sale, with a copy of his previous memorandum attached; the amended motion indicated that "Jayne A. Foster-Fair" had been the purchaser and that she had "registered and was bidding in her individual capacity." The Agnews opposed the motion. Among other objections, they contended that FRP, LLC did not exist on the date of the sale. Following a hearing, the circuit court granted the commissioner's motion and approved the sale in an opinion and order dated June 30, 2021. An order and decree of sale and confirmation was entered by the circuit court on July 22, 2021.

On November 15, 2021, the Agnews filed a "Motion to Set Aside Sale and to Dismiss Th[e] Suit."[4] They contended that the sale was void because the circuit court's second amended decree expressly required payment of the balance of the purchase price within 21 days of the sale's confirmation, and the commissioner had concealed from them the fact that FRP, LLC had failed to comply with this requirement. Following a hearing, the circuit court entered an opinion and order denying the Agnews' motion on February 16, 2022.

This appeal followed.

## II. ANALYSIS

On appeal, "[t]he judgment of a circuit court will be set aside only if 'it appears from the evidence that such judgment is plainly wrong or without evidence to support it.'" *Callison v. Glick*, 297 Va. 275, 287 (2019) (quoting Code § 8.01-680). "We defer to the circuit court's factual findings and view the facts in the light most favorable to . . . the prevailing party below, but we review *de novo* the court's application of the law to those facts." *Koons v. Crane*, 72 Va. App. 720, 732 (2021). Additionally, we review de novo issues of statutory interpretation and the circuit

---

[4] Prior to filing this motion, the Agnews appealed the circuit court's July 22, 2021 order to the Supreme Court of Virginia. They later filed a notice of withdrawal of their appeal, which the Supreme Court granted. *See Michael Agnew, et al. v. United Leasing Corp.*, No. 210980 (Va. Feb. 2, 2022) (order).

court's application of statutes to its factual findings. *Hawkins v. Town of South Hill*, 301 Va. 416, 424 (2022).

### A. Denial of the Motion for Reconsideration

The Agnews argue that "in light of the holding in *Westlake Legal Group v. Flynn*," the circuit court erred when it denied their motion for reconsideration.

In denying the Agnews' motion for reconsideration, the circuit court first held that the instant case was procedurally distinguishable from *Flynn* and that *Flynn* did not "change[] the law regarding confessed judgments . . . [or] the result in this case." It then held that the issues the Agnews raised relating to alleged service defects and the validity of the confessed judgment had previously been resolved by both Virginia and federal courts. With respect to its second holding, the circuit court further explained that it was applying "Res Judicata Claim Preclusion" pursuant to Rule 1:6 and granting ULC's "Pleas of Res Judicata and Collateral Estoppel." So, there were two grounds upon which the circuit court denied the Agnews' motion, although the Agnews' assignment of error challenges only the first ground pertaining to "the holding in . . . *Flynn*."

"It is well-settled that a party who challenges the ruling of a lower court must on appeal assign error to each articulated basis for that ruling." *Rankin v. Commonwealth*, 297 Va. 199, 202 (2019) (quoting *Ferguson v. Stokes*, 287 Va. 446, 452 (2014)). Absent this requirement, "an appellant could avoid the adverse effect of a separate and independent basis for the judgment by ignoring it and leaving it unchallenged." *Id.* (quoting *Manchester Oaks Homeowners Ass'n, Inc. v. Batt*, 284 Va. 409, 422 (2012)). However, "[t]he fact that an appellant 'has not assigned error to each basis for [a lower] court's ruling does not end the inquiry.' Instead, we determine whether any unchallenged basis 'provides a sufficient legal foundation for the [lower court's] ruling.'" *Id.* (second and third alterations in original) (citation omitted) (quoting *Manchester*

*Oaks*, 284 Va. at 422). But "[i]n making this determination, 'we do not examine the underlying merits of the alternative holding—for that is the very thing being waived by the appellant as a result of his failure to [assign error to it] on appeal.'" *Id.* (second alteration in original) (quoting *Manchester Oaks*, 284 Va. at 422).

Here, the circuit court denied the Agnews' motion not only on the grounds that *Flynn* was distinguishable from the instant case, but also on the grounds that res judicata and collateral estoppel barred reconsideration of the validity of the confessed judgment. The latter determination provided a sufficient legal foundation for the circuit court's denial of the Agnews' motion. Because the Agnews assign error only to the circuit court's ruling that *Flynn* did not render the confessed judgment void, and fail to assign error to the circuit court's independent holding that res judicata and collateral estoppel barred reconsideration of the judgment's validity, the Agnews have waived their first assignment of error.[5]

---

[5] The Agnews also contend that ULC's claim is barred by the law of the case doctrine because the forbearance agreement, the contract pursuant to which the confessed judgment was obtained, provided that any funds required to satisfy a judgment after litigation were to be "paid by AGM," the Agnews' company. Because "the parties' contract becomes the law of the case," and because the forbearance agreement provided that AGM was to pay any remaining funds needed to satisfy ULC's judgment, the Agnews maintain that "ULC has no right to come after [them] for any deficiency." But the record before us is insufficient for us to reach the merits of this argument.

"[A]n appellate court's review of the case is limited to the record on appeal," *Wilkins v. Commonwealth*, 64 Va. App. 711, 717 (2015) (alteration in original) (quoting *Turner v. Commonwealth*, 2 Va. App. 96, 99 (1986)), and "it is the responsibility of an appellant to provide us with a record sufficient to allow us to reach his or her assignments of error," *Browning v. Browning*, 68 Va. App. 19, 31 (2017); *see also* Rule 5A:8(b)(4)(ii); Rule 5A:18. "If an insufficient record is furnished, the judgment appealed from will be affirmed." *White v. Morano*, 249 Va. 27, 30 (1995).

The Agnews indicate on brief that they preserved this argument in their August 15, 2011 renewed motion for summary judgment, motion to strike plaintiff's case and for the entry of judgment. But the record does not contain a copy of this motion or the Agnews' briefing on it. The Agnews further indicate that they preserved this issue in the circuit court's final decree, but it contains no written objections from the Agnews. They also contend that their argument was preserved in the circuit court's order of April 25, 2014, which states that on that date, the circuit court heard argument on the Agnews' motion and denied the motion "[f]or the reasons stated on

- 6 -

B. Confirmation of the Sale

The Agnews next argue that the circuit court erred by confirming the sale of the property

to "Jayne A. Foster-Fair for FRP, LLC." Specifically, they contend that FRP, LLC's corporate

existence was cancelled in 2018, and thus the bid received by the commissioner "from 'Jayne

Foster-Fair for FRP, LLC' was void *ab initio*." The Agnews also maintain that the circuit court

erred in its construction and application of Code § 13.1-1050.5 and that the reinstatement of

FRP, LLC on April 17, 2021 did not render the sale valid.[6]

---

the record in open court at that hearing and upon consideration of all of the arguments presented in the Motions." However, the record contains no transcript of, or written statement of facts pertaining to, this hearing. The Agnews further assert preservation in the circuit court's decree of April 25, 2014, granting ULC's motion to appoint a special commissioner and for entry of a decree of sale. The decree states that the matter was heard on April 25, 2014, and it includes written objections by the Agnews; but those written objections state only, "seen & objected to for the reasons stated in the pleadings at the trial and in the Agnews Renewed Motions to Strike & for Summary Judgment." Again, the referenced pleadings and relevant hearing transcript do not appear in the record. Thus, the Agnews have provided no basis for us to determine whether this argument was preserved for appeal.

[6] The Agnews also assert that "Jayne Foster-Fair, as trustee in liquidation" of FRP, LLC, lacked authority to bid on the property, and thus "her bid . . . [was] an *ultra vires* act." But in its opinion and order confirming the sale of the property, the circuit court neither discussed nor ruled on the authority of Jayne Foster-Fair, as an alleged "trustee in liquidation" of FRP, LLC, to bid on the property. Accordingly, the Agnews have waived this issue by failing to obtain a ruling on it from the circuit court. *See McDaniel v. Commonwealth*, 73 Va. App. 299, 313 (2021) (noting the appellant's burden to obtain a ruling from the circuit court on an issue he wishes to raise on appeal); *Bailey v. Commonwealth*, 73 Va. App. 250, 264 (2021) (noting that the appellant's failure to obtain a ruling below "leav[es] us with no decision of the circuit court on that issue to consider on appeal"); Rule 5A:18.

The Agnews further contend that the circuit court erred in confirming the sale because "the 'winning bidder' and putative purchaser, 'FRP, LLC,' does not exist. It never has." This argument is not properly before this Court, both because it is not encompassed by the Agnews' assignment of error and because this bald assertion is not developed on brief. *See Banks v. Commonwealth*, 67 Va. App. 273, 290 (2017) ("[W]e do not consider issues touched upon by the appellant's argument but not encompassed by his assignment of error."); *Parrish v. Callahan*, 78 Va. App. 630, 647 n.13 (2023) ("[W]here a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." (quoting *Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017))); Rule 5A:20(e).

When engaging in statutory interpretation, "[o]ur task 'is to ascertain and give effect to legislative intent, as expressed by the language used in the statute.'" *Verizon Va. LLC v. State Corp. Comm'n*, ___ Va. ___, ___ (Nov. 30, 2023) (quoting *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012)). "Under basic rules of statutory construction, we determine the General Assembly's intent from the words contained in the statute[,]" *id.* at ___ (alteration in original) (quoting *Williams v. Commonwealth*, 265 Va. 268, 271 (2003)), and we "are bound by 'the plain language of a statute unless the terms are ambiguous or applying the plain language would lead to an absurd result,'" *Commonwealth v. Delaune*, ___ Va. ___, ___ (Dec. 14, 2023) (quoting *City of Charlottesville v. Payne*, 299 Va. 515, 527 (2021)). Thus, we "limit[] our inquiry to 'what the statute says and not . . . what we think it should have said.'" *Verizon Va. LLC*, ___ Va. at ___ (second alteration in original) (quoting *Commonwealth v. Amerson*, 281 Va. 414, 421 (2011)).

Relevant here, Code § 13.1-1050.2(A) of the Virginia Limited Liability Company Act, Code §§ 13.1-1000 to -1099.27, provides that where a limited liability company, or LLC, fails to timely pay its annual registration fee to the State Corporation Commission, "the existence of the [LLC] shall be automatically cancelled as of that day." However, Code § 13.1-1050.4(A) and (B) provide a mechanism by which certain LLCs that have "ceased to exist" may seek "reinstatement within five years thereafter."[7] In turn, Code § 13.1-1050.4(C) provides that for LLCs that have been reinstated, their existence "shall be deemed to have continued from the date of the cancellation as if cancellation had never occurred, and any liability incurred by the [LLC] or a member, manager, or other agent after the cancellation and before the reinstatement is

---

[7] Code § 13.1-1050.4(A) provides that the statute's reinstatement mechanism does not apply to certain LLCs, but those statutory exclusions do not apply here. *See* Code § 13.1-1050.4(A) (excluding from the reinstatement mechanism those LLCs that were cancelled pursuant to Code § 13.1-1050.3(A)(1) or judicially dissolved pursuant to Code § 13.1-1047).

determined as if cancellation . . . had never occurred." Also relevant here, Code § 13.1-1050.5 provides that

> [t]he cancellation of existence of a limited liability company shall not take away or impair any remedy available to or against the limited liability company or its members or managers for any right or claim existing, or any liability incurred, before the cancellation. Any action or proceeding by or against the limited liability company may be prosecuted or defended by the limited liability company in its name. The members or managers shall have power to take limited liability company action or other action as shall be appropriate to protect any remedy, right, or claim.

Here, the circuit court found that FRP, LLC's "registration was automatically cancelled on June 30, 2018 pursuant to . . . Code § 13.1-1050.2(A) due to its failure to pay its annual registration fee. However, [the] LLC thereafter filed an application for reinstatement and was formally reinstated . . . on April 17, 2021," some 40 days after the sale of the property.[8] The circuit court then considered the Agnews' argument that the sale was "void" because FRP, LLC "did not exist" on the date of the sale. It further considered the Agnews' argument that under the "plain meaning of . . . Code § 13.1-1050.5," the cancellation of FRP, LLC "completely took away and impaired all remedies available to [it] . . . for any right or claim that arose or any liability that was incurred *after* cancellation," and thus "[b]ecause the bid and tender . . . occurred *after* [FRP], LLC was cancelled, the bid/tender is invalid."

The circuit court rejected both arguments. It first distinguished Code § 13.1-1050.5 as inapplicable to the facts of this case. It then noted FRP, LLC's post-sale reinstatement pursuant to Code § 13.1-1050.4, and the statute's provision that as a matter of law, a reinstated LLC's existence and incurred liabilities during the cancellation period are treated "as if cancellation had never occurred." "Therefore," the circuit court held, "the bid by 'Jayne A. Foster-Fair for [FRP,

---

[8] The Agnews do not challenge the circuit court's factual finding that FRP, LLC was reinstated within three years of its cancellation, nor do they challenge the cancellation and reinstatement timeline determined by the circuit court.

LLC]' and the sale of the [p]roperty [were] not invalidated by the temporary lapse" of the LLC's existence.

### 1. Code § 13.1-1050.4

We first consider the circuit court's application of Code § 13.1-1050.4 in holding that the "temporary lapse" of FRP, LLC's registration did not invalidate Foster-Fair's bid and thus void the property's sale. Virginia appellate courts have not previously interpreted Code § 13.1-1050.4, but the plain language of the statute makes clear that it operates to retroactively effectuate and give full legal force to the post-cancellation actions of an LLC, its members, managers, or agents. Under the statute, so long as a cancelled, qualifying LLC complies with the reinstatement requirements of Code § 13.1-1050.4(A) and (B), the State Corporation Commission "shall enter an order of reinstatement of existence"; then, "[u]pon entry of the order," the LLC's existence "shall be deemed to have continued from the date of the cancellation as if cancellation had never occurred"; and thus "any liability incurred" by the LLC "or a member, manager, or other agent after the cancellation and before the reinstatement is determined as if cancellation of the LLC's existence had never occurred." Code § 13.1-1050.4(C). It is thus clear from the plain language of Code § 13.1-1050.4 that where an LLC is properly reinstated after cancellation, the action of an LLC's agent purporting to incur liability for the LLC during the cancellation period is retroactively given full legal force and effect.[9]

---

[9] *See Dynamic Aviation Grp., Inc. v. Dynamic Int'l Airways, LLC*, Case No. 5:15-cv-00058, at *10 (W.D. Va. July 5, 2016) (order) (considering the application of Code § 13.1-1050.4(C) and noting that under the statute, a party's "successful reinstatement by the Virginia State Corporation Commission will . . . negate the impact of its . . . cancellation"); *Wallace v. Commonwealth*, 79 Va. App. 455, 467 (2024) (en banc) (noting that "well-reasoned opinions from other jurisdictions" are "not binding on this Court," but may nevertheless provide "persuasive authority"); *Smith v. Commonwealth*, 78 Va. App. 371, 383 n.4 (2023) ("[U]npublished opinions can be cited and considered for their persuasive value." (quoting *Otey*

Our Supreme Court's interpretation of an analogous statutory provision supports our interpretation of Code § 13.1-1050.4. Code § 13.1-754, a portion of the Virginia Stock Corporation Act, Code §§ 13.1-601 to -800, is identical in its substantive language to Code § 13.1-1050.4. It provides for the reinstatement, within five years, of corporations that have ceased to exist, and further provides that upon entry of an order of reinstatement by the State Corporation Commission,

> the corporate existence shall be deemed to have continued from the date of termination as if the termination had never occurred, and any liability incurred by the corporation or a director, officer, or other agent after the termination and before the reinstatement is determined as if the termination of the corporation's existence had never occurred.

In *Syed v. Zh Technologies, Inc.*, 280 Va. 58, 69 (2010), our Supreme Court held that in choosing this language, "the General Assembly adopted the principle that if a corporation's existence is reinstated the legal consequence of action by officers, directors, and agents are determined as though the corporation remained in existence throughout the period of termination." This reading of the legislative intent behind a statute so clearly analogous to Code § 13.1-1050.4 bolsters our conclusion that, where a previously cancelled LLC is reinstated, purportedly liability-incurring actions of the LLC's agent during cancellation are retrospectively effectuated.

It is thus clear that when, during the cancellation period of FRP, LLC, Foster-Fair bid on and purchased the property on behalf of the LLC, the subsequent reinstatement rendered her actions as if they had occurred while the LLC was in existence. *See* Code § 13.1-1050.4(C). Accordingly, the circuit court did not err in holding that Code § 13.1-1050.4 applies to the instant case and the "temporary lapse" of FRP, LLC's registration did not invalidate Foster-Fair's bid on the property.

_____

*v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012))); Rule 5A:1(f) (permitting citation of unreported judicial opinions as "informative").

## 2.  Code § 13.1-1050.5

We next consider the circuit court's rejection of the Agnews' argument that Code § 13.1-1050.5 controls here and that under the statute's "plain meaning," FRP, LLC's cancellation at the time of the sale invalidated Foster-Fair's bid on the property.  As with the previous code section, Virginia appellate courts have not previously interpreted the language of Code § 13.1-1050.5.  The plain language of the statute, however, makes clear its inapplicability to the instant case.  As noted above, the statute provides that where an LLC has been cancelled, that cancellation "shall not take away or impair any *remedy available to or against* the [LLC] or its members or managers for *any right or claim* existing, *or any liability* incurred, before the cancellation."  Code § 13.1-1050.5 (emphases added).  Further, "[a]ny *action or proceeding by or against* the [LLC] may be *prosecuted or defended* by the [LLC] in its name.  The members or managers shall have power to take limited liability company action or other action as shall be appropriate to *protect any remedy, right, or claim*."  *Id.* (emphases added).  From this language, it is facially clear that Code § 13.1-1050.5 is a remedies statute, which allows cancelled LLCs, their members, and their managers to litigate suits concerning the LLC's rights, claims, or liabilities that predate its cancellation.  Contrary to the Agnews' argument, the "plain meaning" of the statute does not exclude an LLC or its agent from incurring LLC liabilities after cancellation, even by bidding on property as Foster-Fair did here.

Our interpretation of this statute is again supported by our Supreme Court's interpretation of an analogous statutory provision.  Code § 13.1-755 is a portion of the Virginia Stock Corporation Act that is substantively identical to its analogue statute under the Virginia Limited Liability Company Act, Code § 13.1-1050.5.  In *Harris v. T.I., Inc.*, 243 Va. 63, 68 (1992), our Supreme Court noted that "[u]nder the common law, once a corporation's existence is terminated, its capacity to sue, or to be sued, likewise is terminated . . . .  Code § 13.1-755,

- 12 -

however, partially changed the common law rule" so that claims and liabilities by, against, or of the corporation "survive the termination." This interpretation of the stock corporation analogue to Code § 13.1-1050.5 supports our conclusion that Code § 13.1-1050.5 is a remedies statute that merely preserves a cancelled LLC's ability to "sue, or . . . be sued," *id.*, and not, as the Agnews argue, a statute that bars an agent of an LLC from incurring liabilities for the LLC during a period of cancellation. Indeed, to interpret Code § 13.1-1050.5 as the Agnews suggest—as a statutory provision that excludes an LLC from incurring liabilities during a temporary period of cancellation—would render Code § 13.1-1050.4 a nullity. That is, the Agnews' interpretation would negate the latter statute's effect of ensuring that liabilities incurred by an LLC, its members, managers, or agents during a period of temporary cancellation will have full legal force and effect after the LLC's reinstatement. *See City of Lynchburg v. English Constr. Co.*, 277 Va. 574, 584 (2009) ("It is the duty of the courts to construe statutory enactments so as to avoid repugnance and conflict between them and, if possible, give force and effect to each . . . . Statutes should be construed as a whole . . . . No part of an act should be treated as meaningless unless absolutely necessary." (citations omitted)); *Armstrong Furniture v. Elder*, 4 Va. App. 238, 242 (1987) ("[N]o statute should be interpreted in a way which would render another statute superfluous.").

Based on the foregoing analysis, the circuit court did not err in rejecting the Agnews' argument that Code § 13.1-1050.5 controls here and rendered Foster-Fair's bid on the property for FRP, LLC "invalid." And, as noted above, the circuit court did not err in holding that Code § 13.1-1050.4 controls in the instant case and that under that statute's application, the "temporary lapse" of FRP, LLC's registration did not invalidate Foster-Fair's actions. Because the circuit court's interpretation and application of these statutes governing LLCs was correct, we affirm the circuit court's confirmation of the property's sale.

C.   The Amended Motion for Approval of Report and Sale

The Agnews argue that the circuit court erred in granting the commissioner's amended motion for approval of report and sale, where that motion "sought an order approving a sale to Jayne Foster-Fair individually and never sought an order approving a sale to 'Jayne A. Foster-Fair for FRP, LLC.'"  They maintain that, in filing his amended motion, the commissioner "clearly sought . . . confirmation of a sale to 'Jayne Foster-Fair'" and thereby "abandoned a sale to 'Jayne Foster Fair for FRP, LLC.'"  Relying on *Berry v. Klinger*, 225 Va. 201 (1983), the Agnews contend that "a litigant's pleadings are binding upon him.  His opponent is entitled to rely on the position he takes, and . . . to prepare for trial with the assurance that this position will not be suddenly changed without notice."  Thus, because "[a] litigant's pleadings have to mean something," the circuit court should have estopped the commissioner from taking the position that "the real 'winning bidder' was 'Jayne Foster-Fair.'"

Contrary to the Agnews' argument, the commissioner was not a "litigant" in the instant case.  Rather, it is well-established in Virginia law that a commissioner "is a *quasi* judicial officer."  *Brown v. Brown*, 11 Va. App. 231, 234 (1990) (quoting *Mountain Lake Land Co. v. Blair*, 109 Va. 147, 159 (1909)); *see also Griffin v. Tomlinson*, 155 Va. 150, 153 (1930) (noting that commissioners in a partition action "are, for the time being, officers of the court"); Code § 8.01-607(A) (providing for appointment of commissioners "for the convenient dispatch of the business of [the] court"); Code § 8.01-609 (authorizing commissioners to "examine, and report upon, any matters as may be referred to [them] by any court" and to conduct "proceedings" according to statute and rules of court).  Such an officer is "a mere agent of the court in selling property," for "[t]he court and not the commissioner is the real seller at a judicial sale and the commissioner is merely the ministerial agent of the court and the medium through which the purchaser makes an offer to the court."  *French v. Pobst*, 203 Va. 704, 709 (1962) (citation

- 14 -

omitted); *see also French v. Phipps*, 171 Va. 133, 139 (1938) ("A special commissioner of a court to make a sale is a mere instrumentality of the court and exercises only the naked powers conferred upon him by the court's decree."). This quasi-judicial status of the commissioner renders *Berry* inapposite, as it concerns the pleadings of litigants. Because the commissioner was an agent of the circuit court, rather than a litigant before it, we find no merit in the Agnews' argument.

D. Motion to Set Aside Sale

In their final assignment of error, the Agnews argue that the circuit court erred when it denied their motion to set aside the judicial sale, "where the [c]ourt's Second Amended Decree expressly required payment of the remainder of the purchase price within 21 days of confirmation [of the sale], and that express condition was disregarded."

The circuit court's second amended decree of December 1, 2020 contained the following provision:

> ORDERED that the Property may be sold by the terms of cash or credit bid, with a 10% deposit payable to the Special Commissioner upon a determination of the successful bidder, subject to the subsequent approval by confirmation thereof by the Court with the remainder of the purchase price to be paid to the Special Commissioner within twenty-one (21) days of confirmation of the sale by this Court, and, after the making of the sale the Special Commissioner shall report the sale to the Court for confirmation thereof, and include therewith evidence of receipt of the deposit and/or credit by the successful bidder . . . .

The commissioner sold the property at public auction on March 9, 2021. He then prepared a Memorandum of Special Commissioner's Sale and, on April 23, 2021, filed an amended motion of commissioner for approval and report of sale, with a copy of his previous memorandum attached. These documents indicated that the successful bidder had deposited 10% of the purchase price as required by the second amended decree. Following a hearing, the circuit court

granted the commissioner's motion and approved the sale in an opinion and order dated June 30, 2021. An order and decree of sale and confirmation followed on July 22, 2021.

In their November 10, 2021 "Motion to Set Aside Sale and to Dismiss Th[e] Suit," the Agnews noted both this procedural history and the provision of the second amended decree quoted above, and alleged the following:

> 7. [The commissioner] hid from the Agnews the fact that [the purchaser] failed to pay the remainder of the purchase price within twenty-one (21) days of confirmation of the sale by the Court.
>
> 8. On November 9, 2021, in response to an inquiry from counsel for the Agnews, [the commissioner] disclosed that [the purchaser] failed to pay the remainder of the purchase price.
>
> 9. The sale is void and must [be] set aside. The Second Amended Decree expressly requires payment of the remainder of the purchase price within 21 days of confirmation.

Following a hearing, the circuit court denied the Agnews' motion in its February 16, 2022 opinion and order. Relying on *Branton v. Jones*, 222 Va. 305, 308 (1981), the circuit court first noted that a judicial sale "cannot be set aside after confirmation 'except for fraud, mistake, surprise, or other cause for which equity would give like relief, if the sale had been made by the parties in interest, instead of by the court.'" Relying on *Benet v. Ford*, 113 Va. 443, 447 (1912), it further noted that "'the grounds relied on for the setting aside of a judicial sale'" must "'go to the very substance of the contract, such as fraud, accident, mistake, or misconduct on the part of the purchaser or other person connected with the sale.'" The circuit court then held that the Agnews failed to allege such grounds.

"Prior to confirmation, a court can exercise considerable discretion in deciding whether to confirm a sale." *Branton*, 222 Va. at 308. After confirmation, however, "the purchaser at a judicial sale is as much entitled to the benefit of his purchase as a purchaser *in pais*, and the sale in the one case can be set aside only on such grounds as would be sufficient in the other." *Id.*

- 16 -

(quoting *Va. Fire & Marine Ins. Co. et al. v. Cottrell*, 85 Va. 857, 861 (1889)).  Accordingly, "after a judicial sale has been confirmed . . . , the court will not set aside the decree of confirmation 'except for fraud, mistake, surprise, or other cause for which equity would give relief, if the sale had been made by the parties in interest, instead of by the court.'"  *Tr. of Zion Baptist Church v. Conservators of Est. of Peay*, 259 Va. 546, 550 (2000) (quoting *Berlin v. Melhorn*, 75 Va. 639, 641 (1881)).  In such cases, "the burden is upon the complaining party to show that he has been injured."  *Benet*, 113 Va. at 447.

In their "Motion to Set Aside Sale and to Dismiss Th[e] Suit," the Agnews alleged that the balance of the purchase price was not paid within 21 days of the sale of the property, as required by the circuit court's second amended decree; i.e., they alleged that the purchaser failed to satisfy a condition of the sale required by the decree.  But after confirmation, a decree of confirmation of a judicial sale may only be set aside on equitable grounds, such as "fraud, accident, mistake, or misconduct on the part of the purchaser or other person connected with the sale."  *Benet*, 113 Va. at 447.  In their motion, the Agnews' only allegation of such equitable grounds was directed at the conduct of the commissioner, whom they allege engaged in fraud or misconduct by "hid[ing] from [them] the fact" that the balance of the purchase price was not paid within the requisite time period.  But any such fraud or misconduct by the commissioner was not itself a violation of the decree's 21-day provision, much less conduct touching on the "very substance of the contract," that is, the terms and conditions of the sale as established by the decree.  *Id.*  Accordingly, the circuit court did not err in holding that the Agnews failed to allege sufficient grounds to set aside the confirmation of the sale of the property.[10]

_____

[10] The Agnews also argue that "[t]he failure or refusal of [the commissioner] *and the alleged purchaser* . . . to comply with the Second Amended Decree constitutes intentional misconduct for which the sale can and should be set aside."  But to the extent that the Agnews argue the circuit court erred in denying their motion on this basis, they cannot now expand their

The Agnews also argue that the circuit court lacked jurisdiction to transfer ownership and possession of the property because the remainder of the purchase price was not paid within 21 days of confirmation of the sale. The gravamen of the Agnews' contention is that the circuit court's failure to strictly enforce the 21-day payment term of its second amended decree deprived it of jurisdiction over the property and sale. We reject this argument for the simple reason that a circuit court's failure to enforce its own order in no way deprives it of subject matter jurisdiction over the underlying matter.

"Jurisdiction . . . is the power to adjudicate a case upon the merits and dispose of it as justice may require." *Pure Presbyterian Church of Wash. v. Grace of God Presbyterian Church*, 296 Va. 42, 49 (2018) (alteration in original) (quoting *Shelton v. Sydnor*, 126 Va. 625, 629 (1920)). "[S]ubject matter jurisdiction . . . is the authority granted through constitution or statute to adjudicate a class of cases or controversies." *Id.* (quoting *Morrison v. Bestler*, 239 Va. 166, 169 (1990)). Thus, "[j]urisdiction of the subject matter can only be acquired by virtue of the Constitution or some statute." *Id.* at 49-50 (quoting *Humphreys v. Commonwealth*, 186 Va. 765, 772 (1947)). "[S]ubject-matter jurisdiction is the paramount consideration in assessing whether a court has authority to enter judgment, and a judgment will always be void without it. And . . . the question of subject-matter jurisdiction is a question of law . . . ." *Watson v. Commonwealth*, 297 Va. 347, 352 (2019).

allegation of equitable misconduct beyond their pleadings before the circuit court, which reached only the commissioner. *See Wetlands Am. Trust, Inc. v. White Cloud Nine Ventures, L.P.*, 291 Va. 153, 174 (2016) ("A litigant's pleadings are as essential as his proof . . . . Thus, a court is not permitted to enter a decree or judgment order based on facts not alleged or on a right not pleaded and claimed." (quoting *Dabney v. Augusta Mut. Ins. Co.*, 282 Va. 78, 86 (2011))); *Clark v. Commonwealth*, 78 Va. App. 726, 767 (2023) ("[T]his Court 'will not consider an argument on appeal [that] was not presented in the trial court.'" (second alteration in original) (quoting *Farnsworth v. Commonwealth*, 43 Va. App. 490, 500 (2004))); Rule 5A:18.

Here, the circuit court was authorized by statute to conduct a judicial sale of the Agnews' property. *See generally* Code §§ 8.01-96 to -113 (general provisions for judicial sales); Code § 8.01-96 ("In decreeing a sale under any provisions of law, the court may provide for the sale of property in any part of the Commonwealth, and may direct the sale to be for cash, or on such credit and terms as it may deem best . . . ."). Indeed, the Agnews do not contest that the circuit court had such subject matter jurisdiction. Rather, they maintain that the circuit court was somehow divested of that jurisdiction because it did not strictly enforce the terms of sale in its second amended decree. But because "subject matter jurisdiction arises from . . . statutory grants of authority," any alleged "procedural errors affecting a court's active jurisdiction do not divest the court of its subject matter jurisdiction." *Riddick v. Commonwealth*, 72 Va. App. 132, 144-45 (2020); *cf. Pure Presbyterian Church of Wash.*, 296 Va. at 49 (defining "active jurisdiction" as a court's "power to adjudicate a case upon the merits and dispose of it as justice may require," and discussing the constituent elements of active jurisdiction, including subject matter, territorial, and notice jurisdiction (quoting *Farant Inv. Corp. v. Francis*, 138 Va. 417, 427-28 (1924))). Even assuming arguendo that the circuit court erred by not strictly enforcing its own decree, any such error did not divest the circuit court of its statutory subject matter jurisdiction to conduct the sale. Thus, we reject the Agnews' argument that the circuit court lacked subject matter jurisdiction due to an alleged failure to strictly enforce the terms of its second amended decree.

## III. CONCLUSION

For the foregoing reasons, we affirm the circuit court.

*Affirmed*.